SEBASTIAN GILZINGER, RESPONDENT, *v.* THE SAUGER-TIES WATER COMPANY, APPELLANT.

*Water-course — injunction to prevent its diversion — not dependent upon damage being shown by the riparian owner.*

In an action brought by a mill owner to recover damages for the diversion of water from the stream upon which the mill is situated, and for an injunction to restrain the defendant from continuing to divert the waters of the stream, the court may properly refuse to submit to the jury the question whether the defendant, by such diversion of the waters of the stream, essentially diminishes the supply of water necessary for the use of the plaintiff's water-power and mill.

The right to the whole natural flow of the stream, whether used or not, is a right guaranteed him by law, which the riparian owner cannot be divested of, except by voluntary relinquishment on his part, or by condemnation thereof, under the exercise of the right of eminent domain.

*Semble,* that the rights of riparian owners do not depend upon the use that they may make of the water at any given time, and it does not lie with one who invades those rights to say that the riparian owner has water enough left, or would have enough, if he properly controlled or secured it, for his uses and purposes.

APPEAL by the defendant, the Saugerties Water Company, from a judgment of the Supreme Court, entered in the office of the clerk of Ulster county on the 17th day of December, 1891, in favor of the plaintiff for the sum of $650 damages, together with costs; and also from an order of said court denying the defendant's motion for a new trial made upon the minutes of the court, and upon the exceptions taken by the defendant during the trial, at the Ulster County Circuit before the court and a jury.

*A. T. Clearwater,* for the appellant.

*Howard Chipp, Jr.,* for the respondent.

MAYHAM, P. J.:

The plaintiff is a mill owner with a water power situate on Plattekill, a non-navigable stream of water running through plaintiff's premises. The defendant is a corporation under contract to furnish water to the village of Saugerties to the maximum quantity of one and one-half million gallons daily, drawing its water supply from the Plattekill at a point about five miles up the stream from plaintiff's premises, and thus diverting the amount of water so taken by the defendant from its natural and usual channel or course away from the plaintiff's premises and water-power, and depriving plaintiff of the use of the same.

For this diversion the plaintiff brought this action for damages, and also for a mandatory injunction compelling the defendant to restore the flow of this stream to its natural channel, and to remove its dam, reservoirs and pipes by which the waters of the stream are diverted from plaintiff's mill.

At the trial of this action the court submitted certain questions of fact to the jury as follows:

"*First.* Does the defendant, by any diversion of the water of the Plattekill, deprive the plaintiff of the full beneficial use of his water-power and mill?" To which the jury answered, "Yes."

"*Second.* What are the damages sustained, if any, in consequence of such diversion?" To which the jury answered: "We find for the plaintiff, $650."

The court adopted the above finding of the jury, and upon it and other findings made by the judge directed a decree perpetually enjoining the defendant from any diversion of the waters from plaintiff's mill, and gave judgment for $650 damages, with costs to the plaintiff.

From this judgment and decree the defendant appeals to this court. The first point raised by the defendant on this appeal is, that this case is one of *damnum absque injuria.*

This maxim, under our jurisprudence, seems to apply only to cases "of a wrong done to a party for which the law provides no remedy." (1 Bouvier's Law Dictionary, 423.)

I fail to see its application to this case. If, as this maxim seems to imply, the diversion of this water is a wrong and affects injuriously the rights of the plaintiff, the maxim could have no application to this case, as in that case the law under which the defendant is incorporated gives it ample power of condemnation, and at the same time guarantees to the plaintiff just compensation for the injury. (Chap. 737 of Laws of 1873, as amended by chap. 415 of Laws of 1876.)

The case of *Palmer* v. *Mulligan* (3 Caines, 307), is not an authority sustaining the contention of the defendant upon this point.

That was a contest between riparian owners on the Hudson river, and the case does not disclose that the water was diverted from the natural bed of the stream, or that the supply of the plaintiff was, in any way, diminished or affected, and the court held that what the defendant did in that case was only to exercise his undouted right to use the water in the stream as it passed along his premises.

It cannot, therefore, be held as matter of law in this case that the diversion of this water from its natural channel over the plaintiff's land furnished no ground for legal or equitable relief if the plaintiff's property was injured by such diversion.

We are, therefore, brought to the consideration of the question whether there was any evidence to sustain the verdict of the jury, and the findings and decision in this case.

It is proved, and not disputed, that the plaintiff was the owner of this mill and water-power, and that the defendant had, by dams and conduits, diverted a portion of the waters of this stream above the plaintiff's mill so as to cause it to flow past plaintiff's mill, and thus deprive him of the use of the same, to which, as a riparian owner, he was entitled.

If no injury did or could result to the plaintiff by this diversion, then he had no cause for complaint, and could not recover. But can it be said that the deprivation of the right to have this stream flow over his land did not, and could not injure the plaintiff's property rights in the water privilege? This question was propounded to the jury in substance, and they found that the diversion of this water deprived the plaintiff of the full beneficial use of his water-power. If this finding was sustained by the proof, then, we think, it brings this case within the principle of *Garwood* v. *Central and Hudson River Railroad Company* (83 N. Y., 400), and entitles the

plaintiff to relief by injunction, and also to such damage as he had sustained by reason of such diversion.

In *West Point Iron Company* v. *Reignert* (45 N. Y., 705), the court say; "Equity will interpose by injunction to prevent an encroachment upon the rights of a proprietor in a running stream, and will exercise jurisdiction to compel the restoration of running water to its natural channel."

This follows *Corning* v. *Troy Iron and Nail Co.* (40 N. Y., 191). In *Smith* v. *The City of Rochester* (38 Hun, 612), where the defendant diverted the water from a lake which had flowed into a creek on which the plaintiff's mill was situate, and the plaintiff admitted that the defendant had taken steps by which the plaintiff would be supplied with sufficient, and a more uniform supply of water for his mill than he had from the lake, the waters of which the defendant had diverted; yet it was held that as the defendant had no legal right to divert the waters of the lake, and thus diminish the plaintiff's supply, the plaintiff was entitled to an injunction restraining such diversion, even though it occasioned no actual damage to him, and this case was affirmed by the Court of Appeals and reported in 104 New York, 674.

In the *New York Rubber Company* v. *Rothery* (132 N. Y., 293), it was held that the title of a riparian proprietor to his water-rights in a stream and the right to redress for their invasion is not conditional upon the beneficial user of them, and it was accordingly held that he could recover for a diversion, although he has not yet made any use of the water, or enough is left in the stream for the purpose of his business as then conducted.

It follows, therefore, that the rights of riparian owners do not depend upon the use that they make of the water at any given time, and it does not lie with one who invades that right to say that the plaintiff has enough water left, or would have enough if he properly controlled or secured it for his uses and purposes; the right to the whole natural flow, whether used or not, is a right guaranteed him by law, of which he cannot be divested except by voluntary relinquishment on his part or condemnation for public purposes.

It follows, therefore, that when his rights are invaded without consent, or legal authority, he may, in a proper case, invoke the equitable aid of the court for its restoration.

The remaining question is, did the learned trial judge commit any error in receiving or rejecting evidence or in submitting the case to the jury for which the judgment should be reversed ? The counsel for the defendant requested the court to submit to the jury the following question on which to pass, viz. : " Does the defendant, by any diversion of the water of the Plattekill, essentially diminish the supply of water necessary for the use of the plaintiff's water-power and mill ? " This request the court denied and the defendant duly excepted.

Within the case of *New York Rubber Company* v. *Rothery* (*supra*) we think the ruling of the court on this request was correct. We have carefully examined all the rulings of the learned judge upon the receipt and rejection of evidence to which the appellant took exceptions, and also the portions of the charge to which exceptions were taken by the defendant's counsel, and discover no error for which this judgment should be reversed.

PUTNAM and HERRICK, JJ., concurred.

Judgment affirmed, with costs.