# The Pennsylvania Railroad Company *versus* Miller.

1. Where a railroad company owns the land in fee, through which a stream flows, and it takes water from the stream at a point on its own land, for the purpose of supplying its locomotives, such taking is not under the right of eminent domain ; but by virtue of its rights, as a riparian owner on the stream.

2. The upper riparian owner has the right to the use of the stream, on his land for any legal purpose, provided he returns it to its channel uncorrupted and without any essential diminution ; in all such cases the size and capacity of the stream is to be considered, and any interruption of or interference with the right of the lower riparian owner, is an injury for which an action will lie, unless too trifling for the law to notice.

3. The right of the upper riparian owner is not measured by the reasonable demands of his business. The water belongs to both the upper and lower riparian owners, and if the former wants more than his share he must make it his own by purchase. A railroad company may take it under its right of eminent domain and pay for it.

4. Wheatly *v.* Chrisman, 12 Harris, 298, followed.

February 8th, 1886.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Chester county :* Of January Term, 1885, No. 294.

Case brought by Frank P. Miller against the Pennsylvania Railroad Company, August 24th, 1883, for the recovery of damages resulting to him by reason of the insertion of a pipe in Brandywine Creek, above the plaintiff's mill, on the land of the defendant, and the consequent diminution of the water supply at the mill of the plaintiff. Plea, not guilty.

The following facts appear on the trial before FUTHEY, P. J.:

The defendant in error is the owner, as tenant for years, of a paper mill near Downingtown, Pa. The mill is run by water power, and is wholly supplied with water drawn from a dam in the Brandywine creek. The breast of the dam is erected on the lands of the defendant in error. The back or still water of the dam extends up the bed of the Brandywine creek several hundred yards above and beyond the point where the railroad of the plaintiff in error crosses said creek on a bridge over the same. The right to maintain said dam, and back the water above and across the line of the railroad, was conveyed to defendant's predecessors in title in the year 1798, and has belonged to them ever since that date, and has been maintained as it now exists for over half a century.

The plaintiff in error is the owner by purchase from the Commonwealth of Pennsylvania of a railroad running from Harrisburg to Philadelphia, which crosses the Brandywine creek, where the same stands as still water in the defendant's dam, several hundred yards below the head of the same. At this point of crossing the railroad is conducted over the dam upon a bridge. The bed of the stream beneath said bridge was not at any time physically occupied by the railroad of the State, and has not been since it was purchased by the plaintiff in error.

For some years prior to 1881, the plaintiff in error was supplied with water for the uses of their road by the Downingtown Gas and Water Company, from a point about a mile west of the Brandywine creek. In the summer of 1881, the plaintiff in error, being unable to agree with the Water Company for the price to be paid for this supply of water, which had previously been at the rate of $2,000 per year, erected an engine on the banks of the dam of the defendant in error, for the purpose of supplying themselves with water to be pumped therefrom. The defendant protested but to no avail. A six inch iron pipe was inserted in his dam, two or three feet below the surface thereof, and large quantities of water have been since constantly pumped therefrom by day and night, and conveyed in pipes to the tanks of the plaintiff in error, a mile distant. By this act, the defendant's water supply was materially diminished, and he subjected to considerable loss, for which this suit was brought.

After the case of the plaintiff in the court below was in, the defendant, to show a right to take the water without liability to this suit, offered in evidence the deed from the Commonwealth for the main line of the public works. Neither the charter of the plaintiff in error, nor the supplemental Acts of

[Pennsylvania Railroad Co. *v.* Miller.]

Assembly, conferring special privileges upon it, were offered as proofs or specially pleaded.

No compensation was ever made the defendant in error, nor was security given before or since the water was taken.

The defendant presented the following points, all of which the court refused to affirm:

I. If by reason of the use made by the company defendant of the water of the stream upon which the plaintiff's mill is situated, the plaintiff has suffered any damage, the plaintiff must pursue the statutory remedy provided in the Act of Assembly for the recovery of compensation for the alleged injury, and the present action cannot be maintained.

II. The Legislature having provided a specific remedy for the recovery of damages sustained by the plaintiff in this case, he cannot have recourse to the present action, and the verdict of the jury must be for the defendant.

III. By virtue of the Act of May 16th, 1857, the Pennsylvania Railroad Company had the right to take the water from Brandywine creek for the operation and improvement of its railroad, and if in taking such water the plaintiff had suffered any damage, his remedy is by a jury of view, to assess such damages in accordance with said Act of Assembly, and the present action cannot be maintained.

IV. The defendant in this action having purchased its railroad from the Commonwealth of Pennsylvania, has conferred upon it by the State the right of eminent domain, and is not liable in the present action for consequential damages to the defendant if any have been suffered by him.

V. The Act of May 16th, 1857, by virtue of which the company defendant became the purchasers of the main line, having made no provisions for the payment of consequential damages occasioned by the operating or improving the railroad purchased by the defendant, there can be no recovery in the present action, and the verdict of the jury must be for the defendant.

VI. The defendant having purchased the Philadelphia and Columbia Railroad, were bound to keep the same in good repair and operating condition, and for this purpose had the right to take water for the use of their road, from the Brandywine creek, without being liable for consequential damages to the defendant in so doing.

VI. All the acts proven by the plaintiff to have been done by the defendant were within the powers conferred upon it by the Legislature, and for such acts the defendant is not responsible to the plaintiff.

VIII. The defendant has the right to repair, enlarge or improve its railroad for the purposes for which said road was

constructed and maintained by the commonwealth, and the plaintiff cannot in this form of action recover damages for any such acts of repairs, enlargement or improvement, and the verdict of the jury must be for the defendant.

IX. Under all the evidence in this case the verdict of the jury must be for the defendant.

In the general charge the court instructed the jury, *inter alia:* "We say to you that there is nothing in the law to prevent the plaintiff recovering damages for consequential injury which he may have suffered" from the defendant inserting his pipe into the Brandywine and taking water. therefrom.

Verdict for the plaintiff in the sum of $750, and thereupon judgment, whereupon the defendant took this writ, assigning for error the refusal of the court to affirm the nine points above set out, and that portion of the charge above cited.

*John J. Pinkerton,* for plaintiff in error.—1. The defendant in error cannot support the present form of action. A statutory remedy has been prescribed by which the damages suffered by him are to be ascertained. Act of April 15th, 1859 (P. L., 679).

When the legislature has provided a specific mode by which damages are to be ascertained and determined, that mode must be pursued, and would' exclude all other modes of procedure. Bald Eagle Boom Co. *v.* Sanderson, 32 P. F. S., 409; Com. *ex rel. v.* Garrigues, 4 Casey, 12; Spangler's Appeal, 14 P. F. S., 394; Maron *v.* Kennebec & Portland Railroad Company, 1 American Railway Cases, page 164; Stowell *v.* Flagg, 11 Mass., 364; Stevens *v.* Middlesex Canal, 12 Mass., 466; Cushing *v.* Baldwin, 4 Wendell, 667; Dodge *v.* Co. Commissioners, 3 Metcalf, 380.

2. It is not open to debate that prior to the constitution of 1874, neither the Commonwealth nor its *locum tenens* was liable for consequential damages resulting from the exercise of eminent domain. It is, however, just as well settled that the legislature, in its grant of the right to the corporation might so limit the exercise of that right as to make it subject to the payment of such damages: Lycoming Gas and Water Company *v.* Moyer, 3 Out., 615.

It has been held by this court, in the Monongahela Navigation Company *v.* Coons, 6 W. & S., 101; The Susquehanna Canal Company *v.* Wright, 9 W. & S., 9; McKinney *v.* Monongahela Navigation Company, 6 Harris, 65; Shrunk. *v.* Schuylkill Navigation Company, 14 S. & R., 71; The Philadelphia and Trenton Railroad, 6 Wharton, 45; and Rundle *v.* The Delaware and Raritan Canal Company, 14 Howard, 80,

that the grantees of such a franchise have the same power that existed in the State, and may exercise it, subject only to such restrictions as are imposed in the grant, and that they are subject only to the same liability, unless otherwise declared.    Such grants are always supposed to be for the public benefit, and to be exercised with that view by the corporation rather than by the State itself.    In the cases cited, the doctrine has been distinctly held, and is the settled law of the land, if anything can be settled, that unless the act of incorporation provides for it, consequential damages are not recoverable from a railroad or other improvement company in constructing or maintaining their works.    Thus applying the same rule to them as was held applicable to the Commonwealth itself:    Commonwealth *v.* Fisher, 1 Penn. R., 467.

That the legislature may direct otherwise, nobody doubts; but the liability does not exist unless it is expressed.    The Act of Assembly does not require the company to pay consequential damages, and none were recoverable from them : New York & Erie Railroad Co. *v.* Young, 9 Casey, 181.

3. Charters of private corporations are left exactly as the new Constitution found them, and so must remain until the companies holding them shall enter into a new contract with the State, by accepting the benefit of some future legislation : Hayes *v.* Commonwealth, 1 Norris, 524 ; Pa. R. R. Co. *v.* Langdon, 11 Norris, 21 ; Boom Co. *v.* Sanderson, 32 P. F. S., 402 ; Ahl *v.* Rhodes, 3 Norris, 319.

*R. Jones Monaghan* (*James Monaghan* and *J. Frank E. Hause* with him), for defendant in error.

1. There is no evidence in this case which will relieve the defendant from liability.

The charter of the Pennsylvania Railroad Company, and its supplements, were not offered in evidence.    They are mere private statutes of which this court can have no judicial knowledge unless they are properly proved or pleaded, and are in evidence in each particular case : Timlow *v.* P. & R. R. R. Co., 3 Out., 284; Bank *v.* Gruber, 6 Nor., 469; Pierce *v.* Com'lth, 14 W. N. C., 97.

2. The injury here amounted to an actual taking, within the meaning of the law.

(*a*) The taking of the water out of the plaintiff's dam, where, by his title, he had a right to hold and maintain it, amounted in law to a partial taking of his easement.    That easement was property, his property, and could not lawfully be taken from him without compensation.

" This natural power is as much the subject of property as

is the land itself, of which it is an incident": Per Gibson, C. J., in McCalmont *v.* Whitaker, 3 Rawle, 90; Barclay Coal Co. *v.* Ingham, 12 Casey, 194.

Exactly our case, both in fact and law, is Shenandoah Co.'s Appeal, 2 W. N. C., 47, which arose under the Constitution of 1838.

3. The case in hand falls within the Constitution of 1874, and the plaintiff in error is liable even if the damages be deemed consequential, and, not having given security before the diversion of the water occurred, they are wrong doers: Pusey's Appeal, 2 Nor., 68; Bacheler's Appeal, 9 Id., 209; Road in Springdale, 10 Id., 260; City of Reading *v.* Althouse, 12 Id., 406; Pusey *v.* Allegheny, 2 Out., 522; Lycoming Gas Co. *v.* Moyer, 3 Id., 615; Finn *v.* Gas Co., Id., 631; Minnig *v.* N. Y. &c. R. R. Co., 11 W. N. C., 298; Pierce on Railroads, 167, 178; 1 Redfield on Railways, ch. 13, § 1 (3d ed.), 365.

These cases are a complete answer to Spangler's Appeal, 14 P. F. S., 394, and the other cases cited by the other side. They all arose before the adoption of the Constitution of 1874.

4. This diversion of our water having been made without security being first given, and being unlawful and a trespass, the proper common law action can be maintained to recover damages for the injury: McClinton *v.* R. R. Co., 16 P. F. S., 407; Dimmick *v.* Brodhead, 25 Id., 466; Gilmore *v.* R. R. Co., 41 Leg. Int., 225; s. c., 31 Pitts. L. J., 334; Buffalo, N. Y. & Phila. R. R. Co. *v.* Harvey, 32 Id., 131; Phila. &c. R. R. Co. *v.* Cooper, Id., 120; Pittsburgh, &c., R. R. Co. *v.* Bruce, 6 Out., 34.

5. There is no legal weight in the objection that the plaintiff in error may be liable to repeated suits by us for a continuing trespass, nor that other riparian owners upon the stream may also sue.

"It is still in the power of the company to proceed to appropriate the land [water or easement] for future use, notwithstanding the tortious character of the original entry, for which it is left to answer": McClinton *v.* R. R. Co., 16 P. F. S., 409; Hannum *v.* West Chester, 13 Id., 480.

6. It may be objected that the Constitution of 1874 would impair the charter of the plaintiff in error if it were held to impose a liability for consequential damages.

We answer that the very charter of the plaintiff in error does not assume to exempt them from such damages. It merely says nothing on the subject. It nowhere contracts, or pretends by the remotest implication to agree, that the remedies against the plaintiff in error shall never be changed by the legislature.

An exemption from future legislation is never implied.

There must be an express contract.   To doubt is to deny: Penna. R. R. Co. *v.* Canal Commissioners, 9 Har., 22; Morawetz on Corporations, § 441, n. 3.

7. A state may at any time alter the laws regulating procedure, and provide new remedies for the ascertainment of justice, although applicable to corporations already in existence: Morawetz on Corporations, 448, n.; Railroad Co. *v.* Hecht, 95 U. S., 170.

8. The plaintiff in error has accepted beneficial legislation under the amendment of 1857; Act of April 4th, 1868 (P. L., 59); Penna. R. R. Co. *v.* Langdon, 11 Nor., 21; Act of April 23d, 1864, 12 Wr., 357; Act of March 12th, 1873 (P. L., 253).

If, therefore, so far as regards the Columbia Road, the Penna. R. R. Co. is subject to legislative control, *a fortiori*, is it to constitutional provisions?

The diversion of water here complained of occurs along the line of the old Columbia Railroad.

9. The privilege of taking or injuring private property for public use is an element of the sovereignty of the state which cannot be granted to a corporation so as to preclude future legislative control of its subsequent exercise: Brewster *v.* Hough, 10 N. H., 138; Cooley's Const. Lim., *525, *281; 2 Greenleaf's Cruise on Real Prop., 67.

10. But lastly, even if it be concluded that the Constitution of 1874 could not change the charter of the defendant by adding a liability for consequential damages, which did not before exist, it was certainly competent for the people of the state to require by their organic law that corporations thereafter taking or injuring property must first give security.

Mr. Justice PAXSON delivered the opinion of the court April 19th, 1886.

This was an action brought in the court below against the Pennsylvania Railroad Company for diverting the water from the Brandywine creek, to the injury of the defendant in error, who is the owner of a mill property on that stream below the railroad.   The water is taken within the line of the road and upon the property of the company.   The land covered by the water at this point belongs to the company in fee simple.   The water is pumped up from the creek into large tanks and is then used to supply the locomotives of the company.   The plaintiff alleges that the quantity taken was so large as to seriously impair the power of his mill, and hence this suit.

It was contended upon the trial below, and it was urged here that the proceeding should have been by a jury of view under the Act of May 16th, 1857, and not by a common law action.   We do not regard this point as tenable, for the reason

that the water was not taken by the company under the right of eminent domain, but by virtue of its rights as a riparian owner. As before stated, it owns the land in fee simple at the point where the water is taken, and has precisely the right of every other riparian owner on that stream. It may use the water as other owners use it without responsibility to any one therefor, provided such use is not of a character to injure other riparian owners on the same stream.

The principle established by a long line of decisions is that the upper riparian owner has the right to the use of the stream on his land for any legal purpose, provided he returns it to its channel uncorrupted and without any essential diminution; that in all such cases the size and capacity of the stream is to be considered, and that any interruption of or interference with the rights of the lower riparian owner is an injury for which an action will lie, unless too trifling for the law to notice: Wheatly v. Chrisman, 24 Penn. St. Rep., 298. The size and capacity of the stream has always an important bearing upon questions of this nature. Every riparian owner has the right to use the water of the stream passing over his land for ordinary domestic purposes, and if the stream be so small that his cattle drink it all up, while it may be a loss to the lower riparian owner, it is *damnum absque injuria.* But where the upper riparian owner diverts or uses the water, not for ordinary domestic purposes, such as are inseparable to and necessary for the use of his land, but for manufacturing or other purposes, having no necessary relation to his use of his land, the case is different. In Wheatly v. Chrisman, *supra*, it was held that "a proprietor of land over which a stream of water runs has, as against a lower proprietor, the use only of so much of the stream as will not materially diminish its quantity. His right is not to be measured by the reasonable demands of his business." In that case the allegation was that the stream had been diverted by one riparian owner in order to work his lead mine to such an extent as to sensibly diminish the supply to the lower owner; and that such use was necessary in order to enable him to carry on his business. It was said by this court: "The proposition of the defendant was that he had a legal right to use a *reasonable* quantity of the water for the purposes of his business. The court below replied that his business might reasonably require more than he could take consistently with the rights of the plaintiff. We cannot see how or on what principle the correctness of this can be impugned. The necessities of one man's business cannot be the standard of another's rights in a thing which belongs to both. . . . . The defendant had a right to such use as he could make of the water without materially diminish-

[Appeal of Hall.]

ing it in quantity. . . . . If he needed more he was bound to buy it. However laudable his enterprise may be, he cannot carry it on at the expense of his neighbor. One who desires to work a lead mine may require land and money as well as water, but he cannot have either unless he first makes it his own."

This is conclusive of the present controversy. As before observed, the railroad company may use this water by virtue of its rights as riparian owner; but such use must be such as not to sensibly diminish the stream to the riparian owner below. The water belongs to both, and if the former wants more than its share it must take it under its right of eminent domain and pay for it.

Judgment affirmed.