## Scranton Gas & Water Co. *v.* Delaware, Lackawanna & Western R. R. Co., Appellant.

*Waters—Rights of riparian owners—Diversions—Use for railroad purposes—Prescriptive rights—Lower riparian owner—Water company—Equity—Injunction.*

1. It is well settled that riparian owners have no ownership of running water, nor have they any right to divert or sell it for general use. They are limited in their own use of it to ordinary purposes, incident to the enjoyment of the riparian land, and in exceptional cases to extraordinary uses upon the land itself, provided such extraordinary use does not materially diminish the flow of the stream or impair the quality of the water. A railroad company, therefore, which claims rights as a riparian owner, cannot divert the water of a stream to a reservoir several miles distant, to be used for railroad purposes. The fact that the railroad had certain other rights by prescription or usage does not give it any standing to divert the water in this manner, where it did not appear that there was any long continued diversion of such character.

2. A water company which maintains a plant lower down the stream may in such case maintain a bill in equity against the defendant railroad company to restrain such unlawful diversion of the water and it is immaterial whether the water company claims rights as a lower riparian owner or by virtue of having exercised the right of eminent domain in the condemnation of the stream.

Argued March 31, 1913.   Appeal, No. 413, Jan. T.,
1912, by defendant, from decree of C. P. Lackawanna
Co., in Equity, Oct. T., 1911, No. 1, making permanent
a preliminary injunction in case of Scranton Gas &
Water Company v. Delaware, Lackawanna & Western
Railroad Company.   Before FELL, C. J., POTTER, ELKIN,
STEWART and MOSCHZISKER, JJ.   Affirmed.

Bill in equity to restrain defendant from diverting
the waters of a stream.  Before EDWARDS, P. J.

The opinion of the Supreme Court states the facts.

The court made permanent a preliminary injunction,
restraining defendant from pumping the waters of the
stream.   Defendant appealed.

*Error assigned,* amongst others, was the decree of the
court.

*John G. Johnson,* with him *D. R. Reese, John Mc-*
*Gahren, J. H. Oliver* and *S. B. Price,* for appellant.—
The court's adjudication is inconsistent with its find-
ing that a railroad company is not obliged to purchase
water from a water company incorporated for the pur-
pose of supplying a city, although the railroad uses the
water within the limits of the municipality: Bland v.
Tipton Water Co., 222 Pa. 285; Harrisburg v. R. R. Co.,
33 Pa. C. C. R. 641.

The resolution of a water company appropriating
water of a stream, without further action before or
after, does not entitle it to complain of the use of the
water by another riparian owner.   Under its charter the
plaintiff company does not obtain a right to take all the
waters of Roaring Brook: Lehigh Coal & Nav. Co. v.
Scranton Gas & Water Co., 6 Pa. D. R. 291; Phila. &
Reading R. R. Co. v. Pottsville Water Co., 182 Pa. 418;
Lord v. Meadville Water Co., 135 Pa. 122; Ætna Mills v.
Waltham, 126 Mass. 422; Saunders v. Bluefield Water-
works & Imp. Co., 58 Fed. Repr. 133.

A water company, a riparian owner, cannot enjoin a railroad company, also a riparian owner on same stream, from taking water for the use of its engines at a time when the flow of the stream is four times the amount needed for both parties: Penna. R. R. Co. v. Miller, 112 Pa. 34; Clark v. Penna. R. R. Co., 145 Pa. 438; Rudolph v. R. R. Co., 186 Pa. 541; Hollister v. R. R. Co., 11 Lacka. Jur. 247; Philadelphia & Reading R. R. Co. v. Pottsville Water Co., 182 Pa. 418; Wheatley v. Chrisman, 24 Pa. 298; Philadelphia v. Commissioners, 7 Pa. 348; Brown v. Kistler, 190 Pa. 499; Elliott v. Fitchburg R. R. Co., 64 Mass. 191; Canton v. Shock, 58 L. R. A. 637; Standard Plate Glass Co. v. Water Co., 5 Pa. Superior Ct. 563; Earl of Sandwich v. Great Northern Ry. Co., L. R. 10 Ch. Dig. 707; Wilkes-Barre Water Co. v. Coal & Navigation Co., 3 Kulp 389; Fifield v. Spring Val. Water Wks., 130 Cal. 552 (62 Pac. Repr. 1054); Lehigh Coal & Nav. Co. v. Scranton Gas & Water Co., 6 Pa. D. R. 291; N. J. Zinc & Iron Co. v. Morris Canal & Banking Co., 44 N. J. Eq. 398 (15 Atl. Repr. 227); Hetrich v. Deachler, 6 Pa. 32; Wheatley v. Baugh, 25 Pa. 528; Miller v. Miller, 9 Pa. 74; Bliss v. Kennedy, 43 Ill. 67.

The minutes of a corporation are not evidence of facts therein stated in a suit against another corporation: State Bank of Pike v. Brown, 53 L. R. A. 513; Union Canal Co. v. Lloyd, 4 W. & S. 393; Bedford R. R. Co. v. Bowser, 48 Pa. 29; Graff v. Pittsburgh, Etc., R. R. Co., 31 Pa. 489.

A party cannot assert rights under a contract which it has failed to perform when its performance is made a condition on which the contract rests: Hamilton v. Elliott, 5 S. & R. 375; Zuck v. McClure, 98 Pa. 541; Ferris v. The "Alida," 14 Philadelphia 602; Miller v. Phillips, 31 Pa. 218; Rugg v. Moore, 110 Pa. 236.

A railroad which is a riparian owner may take water for the use of its engines by reason of long continued use and acknowledgment of the right to use in deeds and

contracts to which complaining riparian owner is a party: Share v. Anderson, 7 S. & R. 43; Smith v. Loafman, 145 Pa. 628.

*Alex. Simpson, Jr.,* with him *O'Brien & Kelly* and *F. W. Wheaton,* for appellee.—Plaintiff was incorporated by the special Act of Assembly of March 16, 1854, P. L. (1856) 599, which act conferred upon it the power of eminent domain, and in brief gave it the right to do all things necessary in order to enable it to perform its corporate functions. By virtue of the acts of assembly plaintiff is distinguished from a mere private corporation in which the public is only indirectly interested: Coatesville Gas Co. v. Chester County, 97 Pa. 476; Pittsburgh's App., 123 Pa. 374; Scranton Gas & Water Co. v. Northern Coal & Iron Co., 192 Pa. 80; Leazure v. Hillegas, 7 S. & R. 313.

A corporation has no higher or better right to property obtained by condemnation proceedings than to that which it has acquired by purchase: Oregon Cascade R. R. Co. v. Baily, 3 Ore. 164; In re Petition of Providence & Worcester R. R. Co., 17 Rhode Island 324; Scranton Gas & Water Co. v. Coal & Iron Co., 192 Pa. 80; Scranton Gas & Water Co. v. Railroad Co., 225 Pa. 152.

The act of the defendant was far beyond its right as a riparian owner of the little piece of land, part of its right of way, through which the stream ran: Miller v. Miller, 9 Pa. 74; Wheatley v. Chrisman, 24 Pa. 298; Penna. R. R. Co. v. Miller, 112 Pa. 34; Haupt's App., 125 Pa. 211; Philadelphia & Reading Railroad Co. v. Water Co., 182 Pa. 418; Wilkes-Barre Water Co. v. Lehigh Coal & Navigation Co., 3 Kulp 389.

Whether at the time the defendant was pumping water from the stream there was a surplus of water flowing into the dam below is of no moment: Luther v. Luther, 216 Pa. 1; Zook v. Penna. R. R. Co., 206 Pa. 603; Thompson's App., 126 Pa. 367.

For an unreasonable use of the stream by an upper

riparian proprietor an action will lie in favor of a lower proprietor, notwithstanding the latter has suffered no actual damage: New London Water Comrs. v. Perry, 69 Conn. 461; Morrill v. Water Power Co., 26 Minn. 222 (2 N. W. Repr. 842); Heilbron v. Canal Co., 75 Cal. 426 (17 Pac. Repr. 535); Newhall v. Ireson, 61 Mass. 595; Stowell v. Lincoln, 77 Mass. 434; Tillotson v. Smith, 32 N. H. 90; Harrop v. Hirst, L. R., 4 Exch. 43; Earl of Norbury v. Kitchin, 15 L. T. (N. S.) 501; Sampson v. Haddinott, 1 C. B. (N. S.) 590; Creighton v. Evans, 53 Cal. 55; Dela. & Hudson C. Co. v. Torrey, 33 Pa. 143; Clark v. Railroad Co., 145 Pa. 438; Gould v. Eaton, 117 Cal. 359; McCarter v. Hudson County Water Co., 70 N. J. Eq. 695 (65 Atl. Repr. 489); Gould v. Stafford, 77 Cal. 66 (18 Pac. Repr. 879); Griffiths v. Railroad Co., 232 Pa. 639; Scranton Gas & Water Co. v. Iron & Coal Co., 167 Pa. 136.

Equity has jurisdiction to protect plaintiff's rights. Plaintiff has come into court with clean hands: Jenkins v. Fowler, 24 Pa. 308; Wilson v. Berg, 88 Pa. 167.

OPINION BY MR. JUSTICE ELKIN, May 5, 1913:

The purpose of filing this bill was to restrain defendant railroad company from diverting the waters of Roaring Brook from their natural course above No. 7 dam and making use of them for locomotives, repair shops, passenger station, freight station, round house and other general railroad purposes in the City of Scranton. The only rights the railroad company have in the waters of the stream in question are those of a riparian owner of land adjacent to Roaring Brook. We therefore agree with the learned court below that this controversy in its last analysis centers around the rights of the defendant as a riparian owner. The question for decision here is not what the water company under its charter powers did or attempted to do, but whether the railroad company, being the owner of a small strip of land at the point where it pumped the water from the stream, can

convey it through mains off the riparian land to a reser-. voir two or three miles distant, there to be used as a. supply for general railroad purposes as above indicated. If the railroad company does not have the legal right to thus divert the water from its natural channel, the controversy is within very narrow limits and most of the questions raised in the court below and here have no material bearing on the case. If the railroad company did what it has no right to do, it is no answer to say that the water company has violated its contract or transgressed the law in other respects.

Collateral issues relating to the charter powers of the water company and other matters incident to the business transactions of the parties can have no controlling effect in this controversy because the precise question for decision is the right of the railroad company to divert the water of the stream from its natural course and convey it through, over and away from the riparian land to a reservoir several miles distant to be used for general railroad purposes. In a long and unbroken line of cases it has been held that the diversion of water from its natural course in a stream by a riparian owner for purposes other than those incident to the proper enjoyment of the riparian land is unlawful. The upper riparian owner has a right to the use of the water of the stream on his land for any legal purpose, provided he returns it to its channel without contamination or substantial diminution: Penna. R. R. Co. v. Miller, 112 Pa. 34. In the present case the water diverted, and about which complaint is made, was not used on the riparian land for any purpose, nor was it returned to the stream at any point above the land of the complaining lower riparian owner. It is argued that a riparian owner may use and enjoy the flowing water of a stream in such reasonable manner as not to injure unnecessarily the rights of others and a number of authorities are cited in support of this position. Several of our own cases are relied on to sustain the proposition that a riparian owner has

610 SCRANTON G. & W. CO. *v.* DEL., L. & W. R. R., Appellant.

Opinion of the Court.                    [240 Pa.

the right to the use of the stream as an incident to the riparian land for ordinary purposes, and also for purposes sometimes called extraordinary, provided in such extraordinary use he does not materially diminish its quantity or impair its quality: Penna. Railroad Co. v. Miller, 112 Pa. 34; Clark v. Railroad Co., 145 Pa. 438; Standard Plate Glass Co. v. Water Co., 5 Pa. Superior Ct. 563. In this connection Brown v. Kistler, 190 Pa. 499, is cited as deciding that an upper riparian owner has the right to use the water for household purposes and for watering stock, and also for manufacturing and other purposes, to an extent that is not unreasonable in view of the size of the stream. It is true that it has been so held in the cases mentioned and in other cases not cited. But in no decided case in our State has it been held that a riparian owner had the right to do what appellant has undertaken to do in the present case, that is, pump the water away from the riparian land to be used at distant points for purposes in no way connected with the use of the land or incident to its enjoyment. To so hold now would be to take a long step in advance of any case yet decided in Pennsylvania.

It is settled law that riparian owners have no ownership of running water, nor have they any right to divert or sell it for general use, and are limited in their own use of it to ordinary purposes incident to the enjoyment of the riparian land, and in exceptional cases to what is called extraordinary uses upon the land itself, provided such extraordinary use does not materially diminish the flow of the stream or impair the quality of the water. But the extraordinary use must be upon the riparian land and this is the utmost limit to which our cases have gone. To further extend the doctrine would be to disregard settled principles of law. As we view it there is no escape from the conclusion that appellant standing alone on its rights as a riparian owner cannot lawfully divert the water of Roaring Brook for general railroad uses in the City of Scranton.

But even conceding this to be true, learned counsel for appellant ably and earnestly contend that appellee is not in position to raise the question and has no standing to ask for equitable relief. Several reasons are urged in support of this position, the main one being that for the purposes of this case appellee must be regarded as a riparian owner and not as a water company enjoying its rights under the power of eminent domain. The answer to this position is that it does not matter whether appellee be regarded merely as a riparian owner or as a water company having properly exercised the right of eminent domain in the condemnation of the stream, because in either event it has standing to complain of what was done by appellant in diverting the water from the stream and conveying it away from the riparian land for purposes in no way incident to the enjoyment of the land itself. The situation would be different if the water so diverted was used upon the riparian land. In that case its right to complain would depend very largely upon how the amount of water diverted affected the flow of the stream and when it was returned to its natural course how it impaired the quality of the water. These questions do not arise in the present case and so far as the record discloses there is no evidence to show that the diverted water was returned to its natural course. It was certainly not returned to Roaring Brook at any point above No. 7 dam. The thing complained of here is not that the water was diverted for a temporary use on the riparian land and then permitted to flow back into the stream, but that it was pumped through mains away from its natural channel a distance of several miles and there used for purposes in no way incident to the land to which the right was riparian. We therefore conclude that appellee had standing to complain of the unlawful diversion of the water even if it be regarded merely as a lower riparian owner. This makes it unnecessary to discuss several interesting questions relating to the proper exercise by a water company of the

right of eminent domain in condemning a stream of water. This subject was discussed in Boalsburg Water Company v. State College Water Company, 240 Pa. 198, in an opinion recently handed down. That case is authority for the admission in evidence of the minutes of a water company containing resolutions to condemn the water of a stream in a court proceeding in which the validity of the condemnation was involved. Resolutions to appropriate the water of a stream is the first step to be taken in a condemnation proceeding and when a water company claims a right under the power of eminent domain it is proper to show by the minutes what was done in this respect. This is the answer to those assignments of error in which this question was raised. It is not necessary for the purposes of the present case to discuss or determine the rights, powers and duties of the appellee water company as a public service corporation and we do not do so. These questions have no proper place in determining the rights of the parties to this controversy and we therefore refrain from either discussing or deciding them. Obiter dicta observations are always unsatisfactory and frequently misleading and dangerous.

It is strongly urged that the appellant company has the right by prescription and by contract to divert the water about which complaint is made. This right is asserted under the agreement of 1866, the deed of 1897, and the long continued use of the water at certain points for railroad purposes. The answer to this position is obvious. No attempt is made in this proceeding to interfere with these rights of the railroad company. Whatever rights, if any, appellant may have by deed or covenant or by prescription, it may still enjoy, but we cannot undertake to determine just what those rights are in this case, except that they do not include the right to supply water for general railroad purposes in the City of Scranton. No such right was ever asserted by the railroad company until within a recent period and

then it was challenged by appellee. We do not put this upon the ground that the railroad company by so doing was interfering with the water company in supplying water under its charter to the inhabitants of Scranton. This would be an untenable position under the law. If the railroad company could secure a water supply for its own purposes so as not to divert the water of a stream to the injury of riparian owners, or if it should condemn the water of a stream not already appropriated under the right of eminent domain as it may have the right to do under proper circumstances, its right to thus furnish its own water supply could not be seriously questioned by the water company or by any one else. But when the railroad company stands on its rights as a riparian owner and claims the use of the water for extraordinary purposes it must show that the extraordinary use is upon the riparian land. If it stands upon its rights under a contract or by prescription it is confined to such uses and at such points as the contracting parties stipulated in their agreement or permitted without objection for a long period of years. In the present case these rights are not denied by appellee and the court below did not enjoin the use of the water at certain designated points for general railroad purposes. The decree of the court leaves the railroad company in the enjoyment of all the rights claimed by it for a long period of years. What is enjoined is the extension of those rights into new fields and to distant points where a much larger supply of water is required. In thus defining the rights of the parties we think the learned court below was clearly right.

The standing of appellee to ask equitable relief by way of injunction in a case of this character is ruled by Griffiths v. Monongahela Railroad Co., 232 Pa. 639. As has been hereinbefore pointed out this is not a case where a lower riparian owner seeks to enjoin the extraordinary use of water on the riparian land. The thing complained of here is not the unlawful diversion of

614 SCRANTON G. & W. CO. *v.* DEL., L. & W. R. R., Appellant.

Opinion of the Court. [240 Pa.

water for temporary uses on the riparian land but for general railroad purposes off the land and several miles distant. It is unnecessary to discuss many incidental questions raised by this appeal and to do so would only prolong the opinion without giving any light to aid in the decision of the precise question involved.

Decree affirmed at cost of appellant.