# Consolidated Water Supply Co. v. State Hospital for Criminal Insane, Appellant.

*Waters—Diversion of waters—Lease—Relative rights of upper and lower riparian owners—Ownership of water.*

The use of the waters of a stream by a riparian owner does not include the right to sell the water for general use, nor to divert it, and when used either for ordinary, or extraordinary purposes, the use must be made on the riparian land.

An absolute ownership of all the waters of a stream may be acquired by prescription, and when one who owns the fee grants to a nonriparian owner the entire flow of the stream as it passes over the land, an upper riparian owner, who is in no way affected by the use under the grant, may not complain, but when an action is instituted by such lessee to recover from an upper riparian owner for his diversion of the water, such lower owner sustains the cause of ac-

tion under the grant only so far as the rights of his grantor will permit. Under the grant, the lower owner cannot maintain a right to all the water, assuming that it was the intention to thus convey, unless the upper owner, as a successor in title from a common grantor, is precluded from asserting any right under his deed, nor can the lower owner assert a title by prescription to the waters of the stream, assuming that his right thereunder is complete as it will not prevail as against the upper owner unless the use was exercised over the latter's grant.

A mere nonuser of water rights by the upper owner will not inure to the benefit of the lower riparian owner's prescriptive title, or riparian right. There must be some notorious act, injuriously affecting the upper riparian owner's on his land, hostile, adverse and continuous, before the lower riparian owner can acquire a title by a prescription to the upper riparian rights.

To sustain a claim for the use of water against the upper property owner, who has full riparian rights, or against one who owns such rights, it must appear that the lower owner has suffered some injury, in that the stream has been sensibly or materially diminished in its flow.

When a conveyance is made of the right to take and make use of the water of a stream which flows through a tract of land, and the stream flows through other tracts of land owned by the same grantor, such grant cannot be made to include the riparian right on such other tracts of land, though they are contiguous, unless the intention be clearly expressed in the instrument conveying the right; or if, in the exercise of the rights granted, an interference with such riparian rights must follow; or if there be such use of all the owner's holdings as one piece or tract of land that it could be said from the grant that it was the intention to affect all the land.

Where a railroad company owning several tracts of land through which a stream runs, and on which are three reservoirs, leases the two lower reservoirs to a water company with "the right to take and make use of the water" of the stream for ninety-nine years, and subsequently conveys the tract on which the upper reservoir is situated to an individual reserving the right to maintain the reservoir to any height and to overflow the land without restriction, and thereafter the railroad company after having conveyed two tracts of land to the Commonwealth as a site for a hospital for the insane; releases to the Commonwealth its right to maintain and use the upper reservoir, excepting such rights as may have theretofore been leased by the railroad company to the water company, the water company cannot maintain an action in trespass against the insane hospital for drawing water from the upper reservoir, and pumping it for a considerable distance to its buildings, if it appears that the

water company had not obtained a prescriptive title to the water claimed by the hospital, and that the stream had not been materially diminished by the diversion of the water.

Argued March 5, 1917. Appeal, No. 39, March T., 1917, by defendant, from judgment of C. P. Wayne Co., March T., 1916, No. 94, for plaintiff on case stated in suit of Consolidated Water Supply Co. v. State Hospital for Criminal Insane. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed..

Case stated to determine the right to use water from Racket Brook. Before BARBER, P. J., specially presiding.

The material facts abstracted and condensed from the case stated by the court below, are as follows:

Prior to 1867, the Delaware & Hudson Canal Company, a corporation operating a railroad and having extensive machine shops, was the owner and in possession of a large tract of land in Wayne and Luzerne (now Lackawanna) Counties, upon which a stream called Racket Brook had its source, as well as several tributaries, and across which the stream flowed.

For the purpose of supplying its wants, the Delaware & Hudson Canal Company constructed upon this tract, a reservoir, known as No. 7, and farther down on Racket Brook another reservoir, known as No. 4, from which the water of this stream was conducted to a third reservoir, situate on the Oliver Porter tract, also owned by the company, and from which the railroad and shops of the company were supplied with water.

The Crystal Lake, Water Company is a corporation, duly incorporated by the State of Pennsylvania, for the purpose of supplying the City of Carbondale with water, but when incorporated, or what is the extent of its rights and franchises, does not appear by the case stated.

By its indenture dated November 1, 1867, the Dela-

ware & Hudson Canal Company leased to the Crystal Lake Water Company, "for the purpose of constructing and maintaining a water works for supplying the City of Carbondale with water and for no other intent, use or purpose whatever, the reservoir constructed by the said party of the first part on the tract of land in the warrantee name of Oliver Porter, situate in the City of Carbondale, in the County of Luzerne, and State of Pennsylvania, for retaining water for the use of the said party of the first part. And also the use of the canal or feeder, constructed by the said party of the first part, for conducting the waters of Racket Brook into said reservoir, and the right to take and make use of the water of said Racket Brook for supplying water to the said reservoir, so far as the rights so to do are now vested in the said party of the first part......for and during the term of ninety-nine years, from the date hereof, said term to expire and be fully completed and ended on the 31st day of October, A. D. 1966, at the rent of one dollar for said term."

Under this lease, the Crystal Lake Water Company took possession of the demised property and performed the covenants contained in the agreement until April 11, 1899.

On February 28, 1899, the Consolidated Water Supply Company, plaintiff, was duly incorporated for the purpose of supplying water to the public and the storage and transportation of water power for commercial and manufacturing purposes in the Counties of Lackawanna and Susquehanna; and on April 11, 1899, the Crystal Lake Water Company leased to the plaintiff all its water works, reservoirs, rights, contracts and other property for the term of fifty years.

From this date to the present, the plaintiff company has furnished water to the inhabitants of the City of Carbondale, as well as to the Delaware & Hudson Canal Company and Joseph Benjamin Company, whose shops were located therein, and performed all the agree-

ments of the Crystal Lake Water Company under its lease from the canal company in 1867.

In order to store a supply of water sufficient for its needs, plaintiff company, in 1907, constructed a new reservoir on Racket Brook, known as the Brownell Reservoir, at a point below the reservoirs above referred to as No. 7 and No. 4. The waters of Racket Brook, which formerly flowed from No. 7 into No. 4, and thence into the reservoir on the Oliver Porter tract, were now stored in this new reservoir from which they were conducted in pipes and supplied by the plaintiff to its patrons and to the canal company and the Joseph Benjamin Company; and the old reservoir on the Oliver Porter tract, mentioned in the lease of 1867, was abandoned.

By deed dated June 29, 1869, the Delaware & Hudson Canal Company conveyed to Francis Wolcott a tract of land in Wayne County, known as "The Tymone and McLane" lot, containing fifty acres and thirty-two perches. Excepting and reserving "the unrestricted right to maintain their reservoir upon said lot to any height they may desire, and to overflow said lands or any part thereof, without any restriction, and to draw off, take and use the water from said reservoir at their discretion."

It was almost wholly upon this Tymone and McLane lot the canal company had, prior to November 1, 1867, constructed reservoir No. 7 by building a dam across Racket Brook a short distance below the southern line of the lot on other ground of the company.

By an act of assembly, approved May 11, 1905, the "State Hospital for the Criminal Insane" was duly incorporated with power to purchase land and take title in the name of the Commonwealth.

By deed dated February 19, 1907, the Delaware & Hudson Company (formerly Delaware & Hudson Canal Company) conveyed to the Commonwealth two tracts of land in Wayne County, one containing 449 acres, and the

other 164 acres, upon which a hospital and other neces-
sary buildings were erected.

By a quitclaim deed, dated May 27, 1912, the Dela-
ware & Hudson Company remised and released to the
Commonwealth,

(No. 1) A tract of land in Wayne County, containing
5.16 acres.

(No. 2) A tract of land situate partly in Wayne and
partly in Lackawanna County, below reservoir No. 7,
containing fifty acres.

(No. 3) "All the right, title and privilege of the party
of the first part hereof, to erect and maintain a reservoir
on all that certain tract of land, situate in the Township
of Canaan, County of Wayne, and State of Pennsylvania
......comprising what is known as the 'Tymone and
McLane' lot, containing 50 acres and 32 perches......
together with the right to maintain said reservoir upon
said lot, to any height it may be desired, and to overflow
said lots or any part thereof, without restriction, and to
draw, take and use the water from said reservoir, at its
discretion......being all the rights reserved by the
president, managers and company of the Delaware &
Hudson Canal Company, in its deed of June 29, 1869, to
Francis Wolcott......excepting and reserving from and
out of the above parcels of land the flowage rights, such
rights, if any, as may have heretofore been leased by the
party of the first part hereof, to the Crystal Lake Water
Company, by its lease dated November 1, 1867."

By a quitclaim deed, dated June 9, 1912, the Hudson
Coal Company remised and released to the Common-
wealth, two other tracts of land in Wayne County, one
containing 49.2 acres, situate at the northern end of No.
7 reservoir, and the other adjoining the first on the north-
west, containing eight acres and sixty-nine perches, be-
ing the same two tracts conveyed by the Delaware &
Hudson Coal Company by deed dated September 28,
1908. "Excepting and reserving from and out of the
above parcels of land such rights, if any, as may have

heretofore been leased by the Delaware & Hudson Canal Company to the Crystal Lake Water Company, by lease dated November 1, 1867."

The State hospital, defendant, has placed an engine and pump upon the land conveyed by the canal company to Francis Wolcott in 1869, and quitclaim to the Commonwealth in 1912, known as the "Tymone and McLane tract," and pumps the water from the reservoir No. 7, located thereon, and conveys the same through a pipe for a distance of about three thousand feet, up and over the divide or water shed, and from thence by gravity, a further distance of about a mile to the hospital buildings, situate on a water shed different from that upon which the reservoir is located.

By the case stated, it is provided that "if the court be of the opinion that the defendant has no right to take water from the reservoir No. 7 as aforesaid, then judgment to be entered in favor of the plaintiff and against the defendant for the sum of ten dollars to cover the damages for such trespass up to the date of bringing this suit, otherwise judgment to be entered for the defendant. Costs to follow the judgment and each party to have the right to appeal."

Both parties claim under the Delaware & Hudson Company, the plaintiff under the lease dated November 1, 1867, to the Crystal Lake Water Company of the reservoir of the Oliver Porter tract, for the purpose of constructing and maintaining water works for supplying the City of Carbondale with water, the use of the canal built by the lessors for conducting waters of Racket Brook into this reservoir, and the right to take and use the waters of Racket Brook for supplying this reservoir. In consideration, the lessee agrees to furnish the lessor and the Joseph Benjamin Company the free, unrestricted and gratuitous use of the full and regular supply of water. Neither the Delaware & Hudson Company, nor any lower riparian owner is here complaining, leav-

ing the rights of parties to be determined by what they receive under their respective agreements.

The court entered the following judgment:

"And now, October 9, 1916, the court being of the opinion that defendant has no right to take water from reservoir No. 7, judgment is entered in favor of the plaintiff, the Consolidated Water Company, and against the defendant, the State Hospital for the Criminal Insane, for the sum of ten dollars, damages to April 15, 1916, for the trespass, in accordance with the case stated."

*Error assigned* was the judgment of the court.

*G. Von Phul Jones,* for appellant.—Defendant is not trespassing on any right of defendant: Mayor v. Commissioners of Spring Garden, 7 Pa. 348.

The plaintiff's rights under its lease were subject to those of defendant's predecessor in title to take the water from reservoir No. 7.

The plaintiff's right to supply the Porter reservoir with water from Racket Brook did not entitle it to use the waters to supply the Brownell reservoir: Woodring v. Hollenbach, 202 Pa. 65; Moorehead v. Snyder, 31 Pa. 514.

By abandoning the Porter reservoir the lessee lost its right to use the waters of Racket Brook: Jessup v. Loucks, 55 Pa. 350.

The erection of reservoir No. 7 was an appropriation of the water therein and constituted it a private water supply, which could be used for any purpose: Gring v. Sinking Spring Water Co., 7 Pa. Superior Ct. 63; Gibbs v. Sweet, 20 Pa. Superior Ct. 275.

The Delaware & Hudson Company had the absolute and exclusive right to the water of No. 7 reservoir by reason of "prior appropriation."

The defendant's absolute right to use the water of No. 7 reservoir is only restricted to the extent necessary to fulfill the terms of plaintiff's lease.

*J. W. Carpenter,* with him *H. A. Knapp,* for appellee. —The Delaware & Hudson Company being the owner in fee of the land upon which Racket Brook originated and flowed, had the right to take the water of the stream for the use of its locomotives, or for any legal purpose: Pennsylvania Railroad Co. v. Miller, 112 Pa. 34. And it had the right to construct and maintain reservoirs on its land to impound the water.

Where an easement is granted, to be exercised within certain limits, and the grantee openly exercises a privilege in excess of the limit, continuously and without interruption for twenty-one years, under claim of right, the law may presume a second grant superadded to the first, covering the larger right: Gehman v. Erdman, 105 Pa. 371; Costello v. Harris, 162 Pa. 397.

So a vendee may acquire by adverse possession as against his vendor, title to land not included in his deed: Handley v. Barrett, 176 Pa. 246.

By the lease of 1867 the Crystal Lake Water Company acquired, and thereafter exercised, all the water rights previously belonging to the Delaware & Hudson Company, and in supplying water to the Delaware & Hudson Company in the City of Carbondale it was not only exercising a right but performing a duty, for the said company in the operation of its railroad and its mines and shops in the city is to be regarded as a part of the public therein.

OPINION BY KEPHART, J., May 7, 1917:

The Delaware & Hudson Canal Company owned many large tracts of land contiguous to each other in the Counties of Wayne and Luzerne (now Lackawanna). A stream of water, called Racket Brook, had its source on one of these tracts, and it flowed across several of them. The canal company, prior to 1867, erected on its lands three reservoirs. No. 7, the upper reservoir, and No. 4, the second reservoir, were located on the stream, on different pieces of land, some distance apart. The third

reservoir was located a considerable distance away from the stream on the Porter tract. The waters of the stream were taken from lower reservoir No. 4 by a feeder or canal to the Porter reservoir. The water from all reservoirs was used for the purpose of supplying the machine shop and railroad shops of the canal company and Joseph Benjamin & Company. In 1867 the canal company made a lease to the Crystal Lake Water Company, appellee's predecessor in title. This lease provided that water from Racket Brook was to be taken through the canal or feeder to the Porter reservoir, to be used for supplying the shops and machinery of the canal company, Joseph Benjamin & Company, and the City of Carbondale. The lease granted "the right to take and make use of the water of said Racket Brook for supplying water to said reservoir so far as the rights so to do are now vested in the said party of the first part" (the canal company). Subsequent to this date, in 1869, the canal company conveyed a tract of land to Francis Wolcott, on which was erected reservoir No. 7. In this grant the canal company reserved the right to maintain the reservoir to any height that they might desire, to overflow the grantee's lands, and to draw off, take and use the water from said reservoir at its discretion.

This appellant was duly created by act approved May 11, 1905, and on February 19, 1907, the Delaware & Hudson Company, formerly the canal company, conveyed to the Commonwealth two tracts of land, one containing 449 acres and the other 164 acres, upon which a hospital for the insane was erected, and the institution is now and has been for some time in full operation. On May 27, 1912, the Delaware & Hudson Company remised and released to the appellant several tracts of land, one being the right, title and privilege of the grantor to reservoir No. 7. This latter conveyance excepted and reserved "the flowage rights, such rights, if any as may have heretofore been leased by the party of the first part hereof, to the Crystal Lake Water Company." The appellant

proceeded to take water from this reservoir for the use and purposes of the institution. An action of trespass was instituted, wherein the parties agreed, through a case stated, on the facts as above outlined.

The case in its final analysis, concerns the extent of the grant made to the State institution, the estate, property or right conveyed thereby, and the character of the use that could be made of the waters by the appellant as it affected the appellee. A short discussion of some general principles will aid in the solution of the case.

The ownership of riparian lands does not include ownership of the water which flows in natural channels over or past it. The owner, as an incident or right in the land, or as a property right, may make reasonable use thereof; for domestic and like purposes the owner may consume the entire flow of the stream, if necessary. The use for extraordinary purposes should be such as will not sensibly or materially diminish the quantity or impair the quality to the lower riparian owner, or, as stated in some jurisdictions, it should be such use as will not prejudicially affect the lower riparian owner: Irving v. Media Boro., 10 Pa. Superior Ct. 132; Philadelphia & Reading Railroad Co. v. Pottsville Water Co., 182 Pa. 418. Mr. Justice ELKIN, in Scranton G. & W. Co. v. Del., L. & W. R. R., 240 Pa. 604-610, states the rule in part, that the use does not include the right to sell the water for general use, nor to divert it, and when used either for ordinary or extraordinary purposes, the use must be made on the riparian land. But an absolute ownership of all the water of a stream may be acquired by prescription, Strickler v. Todd, 10 S. & R. 63, and when one who owns the fee grants to a nonriparian owner the entire flow of the stream as it passes over the land, an upper riparian owner, who is in no way affected by the use under the grant, may not complain. The lessor, the Delaware & Hudson Canal Company, could not, as against riparian rights in other lands, grant to its lessee the right to take all the water from the stream. If such a grant was at-

tempted, it was effective as against other riparian owners only to convey the riparian rights of the grantor as they belonged to the property upon which the right existed. Such use must be made on the riparian land, and when, as in this case, the water was to be taken some distance, and used for nonriparian purposes, such grant, as against one lawfully complaining, was of no legal effect. But a mere intruder or trespasser could not complain, nor could the appellant, as an upper riparian owner, object either to the conveyance or to the use thus made or contemplated by the agreement. Nothing could be done under the lease that would curtail any right that might exist in the appellant to use the water for purposes authorized by law. But when an action is instituted by such grantee or lessee to recover from an upper riparian owner for his diversion of the water, such lower owner sustains the cause of action under the grant only so far as the riparian rights of its grantor will permit. Under the lease it cannot maintain a right to all the water, assuming that it was the intention to thus convey, unless the appellant, as a successor in title from a common grantor, is precluded from asserting any right under its deed. Nor can it assert a title by prescription to the waters of the stream, assuming that its right thereunder is complete, as it will not prevail as against the upper owner (the appellant) unless the use was exercised over the appellant's grant. A mere nonuser of water rights by the upper owner will not enure to the benefit of the lower riparian owner's prescriptive title or riparian right. There must be some notorious act, injuriously affecting the upper riparian owner on his land, hostile, adverse and continuous, before the lower riparian owner could acquire a title by prescription to the upper riparian rights: Hoy v. Sterrett, 2 Watts 327; Hartzell v. Sill, 12 Pa. 248. The case stated presents no facts sustaining such title. Of course a claim under any of these rights would be sufficient to enable the owner thereof to complain and prevent any illegal diversion, trespass

or some act committed by an intruder; but to sustain a claim for the use of water against the upper property owner, who has full riparian rights, or against one who owns such rights, it must appear that the lower owner has suffered some injury, in that the stream has been sensibly or materially diminished in its flow. Such facts do not appear. The appellee states in his argument that "the quantity of water taken is immaterial; it is the invasion of a right which this action is brought to prevent." We view the question of damage as a most essential element of its case, for if the appellant, in the use of the water, did not exceed the rights conveyed to it, the appellee would have no cause of action.

The appellee urges that it was the intention of the lease to convey all of the waters of Racket Brook and did affect all the lands owned by the canal company, over and through which it flowed. It must be remembered that the common grantor owned many tracts of land. It is apparent from the map that its holdings covered a large territory. The property right created because a stream of water passes over a tract of land appertains to all the land bordering on the stream, the title to which is in the riparian owner. The owner of such rights may grant them away, and by so doing deprive the successor in title of their benefit; but the grant cannot be enlarged beyond the scope wherein it was intended to operate, and be made to include other lands apparently separate and independent. When a conveyance is made of the right to take and make use of the water of a stream which flows through a tract of land, and the stream flows through other tracts of land owned by the same grantor, such grant cannot be made to include the riparian rights on such other tracts of land, though they are contiguous, unless the intention be clearly expressed in the instrument conveying the right; or if, in the exercise of the rights granted, an interference with such riparian rights must follow; or if there be such use of all the owner's holdings as one piece or tract of land that it could be

said from the grant that it was the intention to affect all the land. None of these circumstances are apparent in this case, and it is evident from a consideration of all the facts that the grantor did not intend by its conveyance to the water company to lease the right to use the water from the reservoir now owned by the appellant. This is emphasized by the fact that at the time the lease was made the lessor was then in the possession and use of the upper reservoir, and that it subsequently in 1869, by deed to Wolcott above referred to, reserved the right to and did use the water from the reservoir, and it further conveyed whatever rights it had to this appellant. The lease to the appellee fixes the place where the water was to be taken from the stream by locating the canal or feeder on the ground, and the facts disclosed in the case stated, with the map attached, show that the land affected was not the same piece as that on which No. 7 reservoir is located. However great appellee's right may be by prescription or grant, as to riparian owners below, the appellant as an upper riparian owner was not affected thereby. We do not consider the reservation in the deed from the railroad company to the Commonwealth as being sufficient to place the title to the water rights at No. 7 reservoir in the appellee. This reservation was placed in the deed to the Commonwealth as a precaution against what might have been a questionable title. It did not serve to enlarge the appellees grant. The riparian rights as they existed on the stream prior to 1867, when the reservoir was built, with such rights as may have been owned by the canal company at the time of the lease, by the impounding of the water and subsequent prescriptive use, were conveyed to the appellant. Nor are we convinced that the appellant exceeded any right now owned by it in its use of the water. From the nature of the grant and the use made, from the physical connection of the asylum properties, without any further information than that contained in the case stated, the facts in this case are easily distinguishable

from those in Scranton G. & E. Co. v. Del., L. & W. R. R., supra. We cannot say that the land served by the appellant was not riparian land within the meaning of that term, or that the use of the water was greater than that sold to the Commonwealth.

The judgment is therefore reversed.