(25 App. Div. 82.)

## GALLAGHER et al. v. KINGSTON WATER CO.

(Supreme Court, Appellate Division, Third Department. January 5, 1898.)

1. RES JUDICATA.

A former judgment for plaintiff establishes his right to recover upon a like state of facts.

2. INJUNCTION—DIVERSION OF WATER.

In an action for damages caused by the diversion of waters of a stream, plaintiff is entitled to an injunction, when the injury is continuous, unless defendant, by right of eminent domain, elects to pay plaintiff just compensation therefor, in the sum the court fixes for that purpose.

3. WATER COURSES—RIGHTS OF RIPARIAN OWNER.

The owner of land through which a stream flows has the right to construct a reservoir and pipes thereon, but not the right to use them so as to deprive others of the usufructuary rights in the waters of the stream, except upon making just compensation.

4. SAME—DIVERSION—DAMAGES.

In an action for the diversion of waters of a stream to plaintiff's damage, so far as past injuries are concerned, defendant is only liable for actual injury, and not the possible injury in case plaintiff had had and operated a mill which could have used more water.

5. SAME—FREEHOLD DAMAGES.

In an action for the diversion of the waters of a stream, in respect to freehold damages, plaintiff is entitled to the full flow of all the water, even if they had never used it.

6. SAME.

An action to recover damages for the diversion of the waters of a stream being an equitable one, the plaintiff was entitled to damages for the six years preceding the commencement of the action, and up to the date of the trial.

7. SAME—PERMANENT INJURIES TO FEE.

The permanent injuries to the fee, in an action to recover damages for diversion of the waters of a stream, cover the future, and commence when the recovery for past damages ceases; that is, on the date of the trial.

8. SAME—MEASURE OF DAMAGES.

The measure of permanent damages for injuries to the fee by reason of diverting the waters of a stream is the difference in value of plaintiff's premises on the date of trial, deprived of the water, and their value without such diversion.

9. SAME—EXPERT EVIDENCE.

The opinion of experts is competent, in an action for damages for diverting waters of a stream, as to the present or past value of the premises injured, with the water diverted, and also assuming no diversion.

10. SAME.

It is not error to receive evidence of the rental and market value of the premises, to show plaintiff's damages, before defendant built its reservoir, in 1883, which has injured plaintiff by diverting the water of the stream, although plaintiff's cause of action only goes back to 1890, when it can be inferred from the verdict that the jury considered all evidence tending to show diminished values from causes other than defendant's acts.

11. SAME.

Actual rents given and received within the time for consideration are competent to show the rental value of the premises.

12. SAME—EVIDENCE.

In an action to recover damages for the diversion of the waters of the stream, it is not improper to show the situation of the mill with respect to its custom, and the productiveness of the neighborhood in grain crops.

13. WITNESS—CONTRADICTION TO SHOW BIAS.

It is not error to allow the contradiction of a witness for defendant on a collateral matter, referring to an altercation between witness and plaintiff's

brother, where it may be inferred that the witness was not free from the animosity which led to, or resulted in, the altercation.

14. DIVERSION OF WATER—EVIDENCE.

An offer by defendant, in an action to recover damages for the diversion of the waters of a stream, to prove that it had transferred its reservoir some time previous to the trial, and had ceased to operate it, so as to show that its liability ceased at that time, was properly overruled, where the evidence offered did not show that the diversion had been stopped.

15. AMENDMENT OF ANSWER.

The denial of an amendment to an answer is in the discretion of the court.

Appeal from trial term, Ulster county.

Action by Catharine M. Gallagher and Margaret Kerr against the Kingston Water Company to recover damages for the diversion of waters of a stream. From a judgment for plaintiffs, defendant appeals. Affirmed.

The appeal was from a judgment (1) awarding the plaintiffs $488.40 damages for the diversion by the defendant of the waters of the Sawkill creek from February 6, 1890, to the time of the trial of the action; (2) adjudging that the value of the riparian rights of the plaintiffs appropriated by the defendant is $1,900; (3) adjudging that the defendant be enjoined from using the waters of the Sawkill to supply water to the city of Kingston, and commanding it to remove its dam, pipes, conduits, and other appliances, unless, within two months after service of notice of final judgment, it pay to the plaintiffs such sum of $1,900; (4) from the order of the court denying a motion for a new trial. The defendant, which was incorporated for the purpose of supplying the city of Kingston and its inhabitants with water, acquired, by condemnation and purchase, riparian rights on the Sawkill (a mountain stream tributary to the Esopus), and in 1883 constructed a reservoir upon the Sawkill above plaintiffs' dam, and laid pipes to the city of Kingston, and thus diverted water from plaintiffs' mill. The plaintiffs are the owners of a gristmill on the Esopus creek, several miles below the defendant's dam, and about a mile below its confluence with the Sawkill. The reservoir of the defendant accumulates the water when the supply is ample, discharging it when the supply is deficient. The plaintiffs began an action in this court in 1887 to recover damages, alleging that the quantity and current of water in their mill had been greatly diminished; the capacity of the mill to produce and grind meal, flour, and other products, greatly diminished; and the use and running of the mill during a portion of each year entirely suspended. That action resulted in a judgment in favor of the plaintiffs for $684.55, which was paid by defendant.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

A. T. Clearwater, for appellant.
John G. Van Etten, for respondents.

LANDON, J. In a former action between these parties the plaintiffs recovered a judgment for damages against the defendant for diverting the waters of the Sawkill creek from plaintiffs' mill-dam and mill by means of its reservoir upon the creek above the plaintiffs' dam, and the pipes leading the water from the reservoir to the city of Kingston. This action is to recover like damages in consequence of the like diversion of the waters caused by the continuance by the defendant of the same means. The former judgment establishes the right of the plaintiffs to recover upon the like facts. Plate v. Railroad Co., 37 N. Y. 472; Uline v. Railroad Co., 101 N. Y. 113, 4 N. E. 436. But apart from the judgment, which was certainly competent evidence, the plaintiffs proved injury and

damages, past and permanent. As the diversion and consequent injury to the plaintiffs are shown to be continuous, the plaintiffs are entitled to an injunction, unless the defendant (which is a corporation entitled, by the right of eminent domain, to take the water from the plaintiffs for the public purposes to which it applies it) elects to pay the plaintiffs just compensation therefor, in the sum which the court ascertains and fixes for the purpose. Henderson v. Railroad Co., 78 N. Y. 423; Pappenheim v. Railway Co., 128 N. Y. 444, 28 N. E. 518; Galway v. Railway Co., 128 N. Y. 132, 28 N. E. 479.

The defendant, as owner of the land through which the stream flowed, had the right to construct the reservoir and pipes, but not the right to use them so as to take away from the plaintiffs their usufructuary rights in the water of the stream, except upon making just compensation therefor. Smith v. City of Rochester, 92 N. Y. 465; Gilzinger v. Water Co., 66 Hun, 173, 21 N. Y. Supp. 121, affirmed 142 N. Y. 633, 37 N. E. 566. So far as past damages were concerned, the defendant was only liable for the actual injury done to plaintiffs, not the possible injury in case plaintiffs had had a better mill, which could have employed more water. But, in respect to freehold damages, the plaintiffs were entitled to the full flow of all the water, even if they had never yet needed or used it. They are entitled to their property rights, whether they use them or not. Rubber Co. v. Rothery, 132 N. Y. 293, 30 N. E. 841; Knitting Co. v. Dean, 13 App. Div. 42, 43 N. Y. Supp. 29.

The action being an equitable one, the plaintiffs were entitled to damages for the six years preceding the commencement of the action, and up to the day of trial. Bier v. Cooke. 37 Hun, 38. Damages to the day of the trial, followed by an injunction, unless defendant should elect to pay the permanent damages to the freehold, were necessary, to give the plaintiffs the complete relief to which they were entitled. As the diversion is a continuous one, the defendant does the plaintiffs injury day by day. The judgment for past damages covers the injury to the date of the trial. The permanent injury to the fee commences when the recovery for past damages ceases (that is, on the date of the trial), and covers the future. The measure of permanent damages is the difference in value of plaintiffs' premises on the day of trial, deprived of the water which the defendant diverts, and their value if without such diversion. The two questions submitted by the learned trial court to the jury for their verdict were framed in accordance with these rules. Unless some error to the prejudice of the defendant occurred on the trial, the judgment should not be disturbed.

With respect to the present value of the premises with the water diverted, the opinions of experts were competent. As to what their present value would be, assuming no diversion of water, the hypothetical assumption is contrary to the existing fact. In the Elevated Railroad Cases, experts are not permitted to give their opinions upon such an hypothesis. Roberts v. Railroad Co., 128 N. Y. 455, 28 N. E. 486; Doyle v. Railway Co., 128 N. Y. 488, 28 N. E. 495. These cases, however, are peculiar. They relate to

consequential damages resulting from the wrongful invasion of incorporeal easements, not from the taking of the land itself, or of a corporeal part or incident of it.     Hence benefits as well as injuries are considered, in estimating damages.     The plaintiffs' rights here are corporeal.     Scriver v. Smith, 100 N. Y. 471, 3 N. E. 675. The construction and operation of the railroad result in some injuries, and often bring such benefits as more than compensate for the injuries.     The court, in measuring damages, regards both benefits and injuries.     The expert, if he gives his opinion, necessarily has to consider both benefits and injuries, and balance the account, which is the very thing the jury have to do.     The majority of the court thought it better that all the conditions affecting values be shown, and thereupon the court or jury should determine.     In the case before us there are no benefits to be considered. It is a simple question of value with or without the water,—like the value of a horse with or without the heaves.     Experts know better than the nonexpert.     Their opinions are competent, and the jury can estimate their value.     The defendant's objections to this class of testimony were properly overruled.     As the plaintiffs were seeking to recover past damages, it was in like manner, and for like reason, competent for them to prove by experts the rental value of the premises during the period for which they were entitled to recover, both with the diminished supply, and upon the assumption that the supply had not been diminished.

The objections to the evidence of the rental value and of the market value of the premises before defendants built their reservoir, in 1883, were based upon the fact that the plaintiffs' right to recovery in this action was limited to the period since February 6, 1890, and also upon the assumption that both the rental and freehold values of the premises had materially diminished between 1883 and 1890, and since the latter date, from other causes than the acts of the defendant.     There was evidence upon both sides of the question whether the value of plaintiffs' mill property had thus diminished. The fact might be that there were no causes, other than the acts of the defendant, diminishing values since 1883.     If there were such causes, they might be slight, and their influence easily estimated. The rental and freehold values before the reservoir was constructed were values which could be fixed with little danger of error; and if the conditions other than the effect of the reservoir, and since its construction, were not likely to diminish values, then the values in 1883 would be a sort of landmark to guide the jury.     It was for the trial judge to determine, upon consideration of the other evidence to which we have alluded, whether evidence objected to would be instructive or misleading; that is, relevant or irrelevant.     We cannot say that he erred in receiving it.     All the evidence tending to show diminished rental and freehold values from causes other than the defendant's acts seems to have received due consideration from the court; and, comparing the verdict with the values given by some of the witnesses, it is inferable that the jury gave these other causes consideration.     Actual rents given and received within the time proper to be considered were competent.     Wright

v. Railroad Co., 78 Hun, 452, 29 N. Y. Supp. 223; Cook v. Railroad Co., 144 N. Y. 117, 39 N. E. 2.

It was not improper to show the situation of the mill, with respect to its custom, and incidentally the productiveness of the neighborhood in grain crops.

A Mr. Legg testified in behalf of the defendant, in disparagement of plaintiffs' mill and its value. He was asked upon cross-examination in respect to an altercation between him and Robert Kerr, a brother of the plaintiffs, and denied having any, and the plaintiffs afterwards called Kerr and contradicted him; defendant's objection that it was a collateral matter called out by plaintiffs being overruled. It appears, however, that the altercation was at plaintiffs' mill, which Legg was operating at the time; that Kerr interfered, apparently in the interest of plaintiffs; and the testimony may support the inference that Legg, in testifying in disparagement of plaintiffs' mill, was not free from the animosity which led to this altercation, or resulted from it; and, in that view, we cannot say that it was error to contradict him. Schultz v. Railroad Co., 89 N. Y. 243. There are many other objections taken by defendant to the admission of testimony. We have examined them, and do not think that it was error to overrule them.

The defendant offered to prove that it had, March 1, 1896, transferred its reservoir and waterworks to the city of Kingston, and had since then ceased to operate them. November 19, 1896, was the day of the trial. This was refused, because not alleged in the answer, or, if subsequent to the commencement of the action, by supplemental answer. If the evidence thus offered tended to show that from March 1 to November 19, 1896, the defendant had ceased to divert the water, then the evidence should have been received, as tending to show when defendant's liability ceased. But the evidence offered did not tend to show that defendant had ceased to divert the water. Defendant built a reservoir upon the stream, and laid a pipe therefrom, through which the water, by gravity, was diverted from the plaintiffs' mill; that is to say, the defendant's construction was of such kind that by means of it the forces of nature diverted the water, and would continue to divert it. Defendant's sale and transfer of the construction did not stop the forces of nature, and hence did not stop the diversion. If, instead of a reservoir on the stream, the defendant had constructed it upon an elevation away from the stream, and had sunk a pit in the bed of the stream, and, by means of a steam pump, had forced the water up into the reservoir, then defendant, upon the sale and transfer of its plant, could perhaps say that it had ceased to divert the water, since such diversion would only continue by continuing to operate the pump. The rule as to nuisances is applicable, since the reason for it is the same. If the owner of premises creates a nuisance upon them, and then demises them, he still remains liable for the consequences of the nuisance, as the creator thereof. Edwards v. Railroad Co., 98 N. Y. 245; Timlin v. Oil Co., 126 N. Y. 514, 27 N. E. 786. Moreover, a private nuisance is defined in Swords v. Edgar, 59 N. Y. 34, as "anything unlawfully or

tortiously done to the hurt or annoyance of the person, as well as the lands, tenements, and hereditaments of another." In respect to past damages, the offer of the defendant to prove the transfer of its plant was therefore properly overruled. In respect to freehold damages, it is optional with the defendant to pay them, or let the injunction issue. If it has abandoned its plant without obligation of indemnity to its grantee in case its diversion of the water be stopped, the injunction will restore the plaintiffs to their rights, and be harmless to the defendant. The offer of the defendant did not go far enough. It did not tend to show that it had stopped the diversion of which it was the creator, and hence the proof would not preclude the recovery of damages up to the trial, nor that it intended to stop it, and hence did not go to future damages. If this view is correct, then the amendment of the answer to the same effect as the proof offered would have been without avail. But the denial of the proposed amendment was within the discretion of the court.

The judgment and order should be affirmed, with costs. All concur.