(105 App. Div. 215.)

## GRAY v. VILLAGE OF FT. PLAIN.

(Supreme Court, Appellate Division, Third Department. May 3, 1905.)

1. WATERS AND WATER COURSES—RIPARIAN RIGHTS—DEPRIVATION—RIGHT TO COMPENSATION.

A riparian proprietor has a property right in the full flow of all the water of the stream, of which he cannot be deprived by diversion without his consent, except by condemnation proceedings and the payment of compensation, although such diversion leaves him sufficient water for all the purposes for which he actually uses the same, and he has never needed or used the full flow of the stream.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, §§ 33–37, 42, 67–74.]

2. SAME—MEASURE OF DAMAGES.

The measure of permanent damages done to a riparian proprietor by the diversion of water above his premises is the difference between the value of his premises deprived of the diverted water, and their value if without such diversion, estimated as of the date of the trial.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, § 82.]

Appeal from Judgment on Report of Referee.

Action by William H. Gray against the village of Ft. Plain. From a judgment for plaintiff, defendant appeals.   Affirmed.

The action was brought to recover damages for diverting the waters of North creek, a stream flowing through a farm of about 96 acres owned and occupied by the plaintiff, and to enjoin the defendant from continuing such diversion.   The defendant in 1902 constructed a dam 22 feet high, with an apron 22 feet wide, across said creek, about a mile and a quarter above the plaintiff's farm, from which dam the water is conducted a distance of 8 or 9 miles—a portion of the way in pipes 10 inches in diameter, and a portion of the way in pipes 8 inches in diameter—to a distributing reservoir near the defendant village, from which it is conducted in 10-inch pipes for use therein.   The village of Ft. Plain, the defendant, contains a population of about 2,500, and the amount of water required to supply them is from 150,000 to 200,000 gallons daily. The defendant is able to take from said dam above plaintiff's farm in its said pipes 1,069,000 gallons of water every 24 hours, but since the erection of said dam and pipe lines the defendant has not at any time drawn water amounting to more than one-fourth the capacity of said 10-inch pipe.   The amount taken and diverted by the defendant, however, has materially lessened the flow of said creek where it runs over and through the plaintiff's farm. There is a fall of sufficient head in such creek on plaintiff's farm, with which the amount of water capable of being carried through the defendant's pipes from said dam above the lands of the plaintiff would produce 10 horse power of energy.   The plaintiff, however, has never used the waters of the creek for power, but there was proof that about 50 years ago there was a sawmill and a fulling and carding mill there, operated by water power from said creek. The defendant intends in the future to continue to divert the water from such creek through its said pipes for fire, domestic, and other village purposes. The action was referred to a referee to hear and determine.   On the trial it was stipulated that, if the referee finds that the plaintiff is entitled to an injunction, he then act as commissioner, and condemn the water rights of the plaintiff, and fix the future damages, and upon payment of which no injunction shall issue.   The referee, in company with the attorneys for the respective parties, and with their consent, viewed the plaintiff's premises, and the dam or reservoir above his premises.   The referee found that the plaintiff's damages for the diversion of the waters of said creek up to the time of the commencement of the trial was the sum of 6 cents, and that his fee or future damages for the right of the defendant to take and divert in perpetuity not to exceed 1,069,000 gallons of water per day from said creek was the sum of $450, with interest from the date of commencing the trial.   He also decided that, on the payment to the plaintiff by the defendant of such damages within the time specified in the report, the latter should have such rights in perpetuity, and, in case of failure to make such payment, the plaintiff should have a perpetual injunction, restraining such diversion.   From the judgment entered upon this report, the defendant appealed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

H. M. Eldredge, for appellant.

H. D. Wright, for respondent.

CHESTER, J.   The defendant had never condemned the right to divert the waters of this stream from its natural channel.   The plaintiff, as a riparian owner of lands on the stream below the point of diversion, was entitled to the full flow of all the water of the stream, even if he had never yet needed or used it.   This was none the less a property right of his, simply because he had never utilized it.   New York Rubber Co. v. Rothery, 132 N. Y. 293, 30 N. E. 841, 28 Am. St. Rep. 575; Gallagher v. Kingston Water Co., 25 App.

Div. 82, 49 N. Y. Supp. 250. And it was a right of which he cannot be deprived without his consent, except by condemnation and by being compensated therefor. It is said in Standen v. New Rochelle Water Co., 91 Hun, 272, 36 N. Y. Supp. 92:

> "The general rule of law is that the owner of land, through which a stream of water runs, has a legal right to the usual and natural flow of the water across his premises, of which he cannot be deprived without his consent or just compensation, subject, of course, to the right of the upper riparian owner to use water for his own domestic purposes. The right to a stream of water is as sacred as the right to the soil over which it flows. It is a part of the freehold, of which no man can be disseised but by the lawful judgment of his peers or by due process of law."

These and numerous other cases which might be cited effectually dispose of the claim of the appellant that because, after the diversion of the water by the defendant, the plaintiff had left all he needed for watering his stock, horses, and cattle, and for all domestic purposes, he was not damaged by such diversion, and therefore ought not to succeed in this action. The learned referee has practically adopted this view, so far as past diversion is concerned, for he has only awarded nominal damages for that; but, as the defendant intends to permanently divert the waters of the stream, the learned referee was clearly right in awarding substantial fee damages for the permanent injury, based upon his view and upon the evidence, and in awarding an injunction in case such damages were not paid. The referee, under the stipulation of the parties upon the trial, was in effect made a commissioner as in condemnation proceedings. The measure of permanent damages is the difference in value of plaintiff's premises on the day of the trial, deprived of the water which the defendant diverts, and their value if without such diversion. Gallagher v. Kingston Water Co., supra. This was the rule followed by the referee in fixing the permanent damages, and we think there is sufficient evidence to support his finding as to the amount of such damages.

We have examined the numerous exceptions taken to the ruling of the referee, but we think none of them present reversible error.

The judgment should be affirmed, with costs. All concur.