GUSTAV H. KNAUTH, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

Second Department, December 23, 1926.

**Waters and watercourses — prescriptive right to divert waters from natural stream — plaintiff is riparian owner — defendant uses water for locomotives to injury of plaintiff's mill — first damage was noticed in 1910 — burden of proof on defendant to show same use for twenty years — defendant did not sustain burden — prescription began only from time damage resulted from diversion — resistance by plaintiff in removing submerged barrier or dam constituted interruption — injunction restraining diversion of any water not too broad.**

The plaintiff, who is a riparian owner, was properly granted an injunction restraining the defendant from supplying its locomotives with water from a natural stream which ran through plaintiff's property.

The defense that the defendant had acquired the prescriptive right to use the water was not sustained by the defendant, since it appears that while the defendant had been using the water to some extent for twenty years, it appears also that no damage resulted to plaintiff's mill below defendant's pumping station until about 1910, less than twenty years prior to the commencement of this action. It also appears that the use of the water has resulted in decreasing the operation of defendant's mill, especially during periods of dry weather.

A prescriptive right does not ripen until the lapse of twenty years after damage has commenced by the diversion of the water.

Furthermore, it appears that the plaintiff forcibly removed a submerged barrier or dam erected by the defendant to better enable it to withdraw the water from the stream. That act of resistance by the plaintiff interrupted the running of the prescriptive right.

The injunction which restrains the defendant from using any water from the stream is not too broad.

APPEAL by the defendant, Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rockland on the 19th day of April, 1926, upon the decision of the court rendered after a trial at the Rockland Special Term.

*John Bright* [*Abram F. Servin* with him on the brief], for the appellant.

*Albert G. Christmas,* for the respondent.

KAPPER, J. The judgment appealed from restrains and enjoins the defendant " from drawing water from the Pascack Brook at any point where its right of way crosses or borders the lands of the plaintiff." Plaintiff's property is located near the village of Spring Valley, Rockland county. It is an irregular and comparatively extensive piece of land. Through it runs or flows, practically in a southerly direction, Pascack brook, which was found by the learned trial court to have " flowed from time immemorial," through the premises now owned by plaintiff, and which brook " is a natural waterway flowing in defined channels." Upon his said land plaintiff maintains a dam across said Pascack brook and a cutlery mill which he operates by means of the water power obtained from impounding the waters of said Pascack brook by means of such dam. Said cutlery mill and dam are situated near the southerly extremity of the plaintiff's land. Above and to the north of the mill and dam the defendant railroad company has a right of way for its railroad which crosses over said Pascack brook and through a small portion of the plaintiff's land. The cutlery mill has been in operation upwards of twenty-five years, and ever since 1914 the plaintiff has been the owner of the property and the mill, he having acquired it from his mother who had been its previous

owner.  At the point or place where the defendant's right of way crosses Pascack brook, the defendant constructed a water tank and a pump or pumps by means of which the said water tank was filled and replenished with water drawn from said brook and wherefrom the defendant supplied its locomotives by a filling of their tenders with water from said tank, and has continued such operations for upwards of twenty years prior to the commencement of the action.  There was evidence that at some period within twenty years prior to the commencement of the action a new tank had been installed by the defendant with a capacity twice as large as the old one, and at the same time a new pump was installed in connection with it.  There was also evidence that from time to time, and well within the twenty years, the defendant's locomotives had been changed by the substitution of larger ones, with practically a doubly increased tank capacity of the tenders.  It was also shown that the smaller locomotive tenders had another water-filling station or facility on the same railroad route or runs as are now involved, this station or facility being at a point remote from the *locus in quo*, but that since the larger tenders had been substituted by the defendant, this other water-filling station had been discontinued by the defendant.  It was further found by the Special Term as follows:

" VII. That prior to 1910 and continuously until the present time, the defendant has operated a pump and pumps on its said right of way at the place where said right of way crosses the Pascack Brook, by means whereof it draws up into a tank, by the defendant there built and maintained, quantities of water out of said Pascack Brook for the use of its engines.

" VIII. That prior to 1910, the aforesaid use of the water from the Pascack Brook by the defendant, did not visibly or sensibly diminish the volume of the Pascack Brook, but since 1910 the quantities of water drawn by the defendant from the Pascack Brook have materially increased, and the defendant has withdrawn water from said Brook to such an extent that the volume of the water in said Brook and the flow thereof, has been materially and sensibly diminished.

" IX. That the aforesaid withdrawal of water by the defendant from the Pascack Brook has, since 1910, diminished the flow of water in said Brook to such an extent that it has seriously interfered with . the power which would otherwise have been supplied to plaintiff's cutlery mill, so that the plaintiff has at times been unable to operate said mill."

The defendant does not assert a right to draw water from said brook as a riparian owner.  What it does claim is that having

abstracted waters from said brook to facilitate the operation of its trains for a period of over twenty years, it has acquired a prescriptive right to the waters of such brook, which, of course, means forever, irrespective of the injury to plaintiff's property and mill. The assertion of such a right which carries with it the taking away from the owner of the land below one of its natural advantages, capable of being applied to profitable·purposes, and depriving him of it altogether by anticipating him in its application to a useful purpose, can only be permitted· upon indubitable proof that the prescriptive right has been obviously exercised by the one claiming it and to the manifest injury of the one against whom it is claimed. The only defense, as indicated, is the railroad's asserted prescriptive right.· Such was its only answer; and where that is the state of the pleadings, the burden of establishing the prescriptive right is upon him who asserts it, in this case the defendant railroad. " The burden of proving uninterrupted user of the water with the knowledge of the owner is on the one claiming the right in case he asserts title to it and attempts to enforce his title before the courts." (2 Farnham Waters & Water Rights, 1759.) Agreeable to this rule, the defendant undertook the burden of proof at the outset of the trial. What it established was through its records, which showed for certain months of some years beginning with June, 1901, the average tank capacity of its locomotives on this branch of its railroad. These records do not show the amount of water taken from Pascack brook, but simply show that certain numbered engines had a specified water tank capacity on their tenders. It suffices to say that these records show in the early years tank capacities of the engines assigned to this part of the railroad of an approximate total of 42,000 gallons, which as time went on gradually increased to well over 100,000 gallons. But, as evidentiary of the amount of water taken from day to day during the period claimed, the records do not require us to reverse any finding made by the learned Special Term justice. Certainly, the defendant's showing in this respect was not at all conclusive. It does bear out other proof that the tank capacity of the defendant's engines in the later years doubled that of the earlier years. As stated,· the amount of water withdrawn, whether to the extent of the tank capacity, or more or less, is not established. By an exhibit purporting to show the actual amount of water taken from this brook for a period of three days in the year 1924, the claim is made by the appellant that there was pumped by it from this brook approximately 62,000 gallons a day during the entire twenty years. The exhibit did not conclude the trial court, nor did the oral testimony from which the inference was sought to be drawn that this average withdrawal had been

maintained for the twenty years; and the requested finding to that effect was properly refused.

On the other hand, it was established by plaintiff that the first noticeable effect upon his cutlery mill water supply was in 1910; that in dry spells the withdrawal of the water pumped by the defendant made it impossible for plaintiff's mill to work full time; that the effect of the withdrawal by the defendant of the water caused a water shortage which required a shutdown of the mill for a brief time in 1917; that the defendant had inserted a submerged barrier or dam in the brook near its tank which diverted the water so that it would not flow down and into plaintiff's storage reservoir which the plaintiff had constructed in connection with his mill dam, and that the plaintiff in 1917 entered the brook at this point and removed this submerged barrier or dam, with the result that there came a freer flow of water to his premises.

The learned Special Term, in conclusions of law, held plaintiff entitled to have Pascack brook flow to and through his land by its natural flow and without hindrance by the defendant, and that defendant's use of the water since 1910 has been in violation of plaintiff's rights.

It is the contention of the appellant that its taking of water from Pascack brook for upwards of twenty years has ripened into a prescriptive right irrespective of the amount abstracted or the effect on plaintiff's mill. The learned court at Special Term held that there had been no visible diminution in the volume of the stream until the year 1910, and that, therefore, a right by prescription did not attach. Upon the proofs, I think the holding as to " no visible diminution " in the supply prior to 1910 was justified, and that in such circumstances a right by prescription cannot be said to have accrued, the period essential to create the right, namely, twenty years, not having elapsed. In *Union Mill & Mining Co.* v. *Dangberg* (81 Fed. 73, 91) it was said: " nor can this right [right acquired by prescription] be acquired if, during the time in which such right is claimed to have accrued, there has been an abundant supply of water in the stream or river for all other claimants. In order to enable respondents to maintain a prescriptive right to the flowing water in the Carson river as against complainant, * * * there must have been an actual occupation by the diversion and use of the water, to the knowledge and acquiescence of the complainant, such as to occasion damage and give it a right of action. There must have been such a use of the water, and such damage, as would raise a presumption that complainant would not have submitted to it unless the respondents had acquired the right to so use it."

In *Anderson* v. *Bassman* (140 Fed. 14, 25) the court say: " The defendants' use of the water of the river was not adverse until it became injurious to the complainants and amounted to an actionable invasion of their rights."

I have adverted to the fact that the defendant makes no claim as a riparian owner but asserts a prescriptive right only. The distinction between such claims seems clear, as appears from the opinion of Judge DANFORTH, writing for the court, in *Garwood* v. *N. Y. Cent. & Hud. R. R. R. Co.* (83 N. Y. 400, 405), viz.: " Now in the case before us the defendant has done something more; it has not been content with exercising this privilege; it has diverted a considerable portion of the stream not for any use upon the land past which it flows, but for the transaction of its business in other places and for purposes in no respect pertaining to the land itself. The pipes and reservoirs of the defendant are not laid or constructed for the mere purpose of detaining the water a short time, or applying it to machinery or other object upon the land itself, and afterward restoring it, but for facility in filling the defendant's locomotives, in order that they, with power generated from it, may pass as the interest of the defendant may require, to the east or west, returning no portion of it, even in the form of vapor, to the stream from which it was taken. So far as the plaintiff is concerned, it has carried away from his premises the water, as effectually as if it had been turned into another channel and discharged at Albany or Buffalo; and from this, as the jury has found, he has sustained damage. Not only this, but it has been done under a claim of right by the defendant, which, if acquiesced in by the plaintiff, would in course of time ripen into a realty and defeat the incident of his property — the right of the plaintiff as riparian owner to have the water flow as it had theretofore been accustoned to flow. For in that case, although the defendant could not claim the right as riparian proprietor, it might claim it by prescription; and to prevent this result also, the plaintiff had a clear right to an injunction."

Assuming that the last words quoted from Judge DANFORTH's opinion indicate the prescriptive right that might be claimed, this does not mean that such prescriptive right may be claimed of a user which originally was neither injurious nor damaging to the lower proprietor but became such only in later years and too recent to ripen into a prescriptive right. The learned Special Term justice in his memorandum opinion said that the user to establish a prescriptive right must " have been of such a character as to appreciably diminish the natural flow of the stream on plaintiff's property." This was a correct view of the law as the cases cited from the

Federal Reporter (*supra*) indicate. It was not until 1910, as already shown, that there was observed a diminution in the plaintiff's water supply obtained from Pascack brook. It was also, as stated, established that there had been a substantial change in the amount of water taken by the enlarged tank capacity of the locomotive tenders; and that this enlarged use had not continued for the prescribed period. It was held in *Prentice* v. *Geiger* (74 N. Y. 341, as per syllabus): "To constitute a right by prescription there must have been an adverse, continuous and uninterrupted exercise of the right for twenty years without substantial change; a party cannot, within the twenty years, enlarge the use, and at the expiration of that time claim the use as so enlarged."

It may also be added that the facts show a resistance upon the part of the plaintiff to the defendant's abnormal use of the waters of this brook. This resistance took place in 1917 by the removal, by plaintiff, by force, of the submerged barrier or dam constructed by the defendant, from which act there ensued a freer flow of water and a lessened interference with plaintiff's rights; and of such resistance it was said in the case of *Union Mill & Mining Co.* v. *Dangberg* (*supra*, 91), that "An adverse use of water for the statutory period must be open, notorious, peaceable, continuous, and under claim or color of right; for, if any act is done by other parties claiming the water that operates as an interruption, however slight, it prevents the acquisition of any adverse right."

Lastly, the appellant claims that the injunction restrains it from drawing any water whatever from this brook, and that, as it at least has drawn water in some amount for over twenty years, the injunction should be modified so as to restrain it only from diverting water to the injury of the plaintiff, leaving it free to continue to draw some water. The claim ought not to be allowed. The defendant's position is not that it has a right to draw some water, but that it has a right to all of the waters of the brook which it is minded to draw for the operation of its railroad, and that this right is based upon that which it acquired by prescription. It has failed to establish a prescriptive right, and the injunction, it seems to me, preventing the appellant from taking water from this brook was, in the circumstances, none too broad.

I advise that the judgment be affirmed, with costs.

Present — KELLY, P. J., JAYCOX, MANNING, KAPPER and LAZANSKY, JJ.

Judgment unanimously affirmed, with costs.