MATILDA HARTZELL, Plaintiff, *v.* VILLAGE OF HAMBURG, Defendant, and Eleven Other Actions by Different Plaintiffs against Same Defendant.

Supreme Court, Erie County, May 2, 1935.

*Willard H. Ticknor* and *Robert W. McNulty*, for the plaintiffs.

*R. Foster Piper*, for the defendant.

CHARLES B. WHEELER, Official Referee. The various plaintiffs above named are owners of properties on the so-called Eighteen Mile creek, which flows through the incorporated village of Hamburg in Erie county and into Lake Erie. The distance from the village to Lake Erie is about four miles.

The village of Hamburg has grown in population from 2,741 in 1915 to 4,731 in 1930.

Prior to the building of the present water system it was supplied in the main by water from wells outside the village limits. The time arrived when a larger supply was needed. Accordingly the village caused plans to be made for the purpose of supplying water to its residents for domestic consumption and for fire protection by damming the waters of the Eighteen Mile creek and thereby creating a reservoir from which water is pumped into mains or pipes running through the village streets.

There had been for some years at least prior to the proposed improvement a low dam some three feet high, but the proposed dam was to be raised in height and thereby a large reservoir created. When the prior dam existed, very little, if any, water was taken by the village from the creek. The testimony is that if any was taken, it did not perceptibly lessen the natural flow of the creek.

However, the proposed plans for the raising of the dam and the storage of the creek waters was submitted for approval to the State Conservation Commission. Public hearings were had and the State Commission approved the plans, and the dam and pumping station built and completed and put into operation on or about the 6th day of March, 1928. As the referee understands the evidence, the use of the water from the wells mentioned was discontinued and the needed waters thereafter all taken from the reservoir in question.

As a result, the village consumption of water from the creek took most, if not all, the water coming down the creek. At least during dry seasons very little passed over the dam and the bed of the creek below the dam became exposed and little remained except in occasional pools or spots.

The evidence further shows the village maintains a sewage disposal plant. The village sewage first goes to a sewage treatment plant, and is then emptied into the creek below the dam. The flow of the stream at times is not sufficient to carry it away and this causes offensive odors which are so strong as to greatly disturb and annoy those living near the banks of the stream.

It should also be stated that after the dam in question was built, the village added to the top of the dam flush boards, which impounded still more water, and these flush boards caused the water in the dam to rise to a height in excess of that authorized by the original plans and approved by the State Commission.

In this connection, it should also be noted that the village not only supplies its own residents with water, but also water to those living outside the village boundaries. For water so furnished outsiders, the village has received since March, 1928, up to the time of the trial, some $14,963.01.

These plaintiffs as riparian owners of property along the Eighteen Mile creek contend their properties have been damaged by the taking of the waters of the creek as above stated and ask for injunctive relief against the continuance of the village so doing. They have never been paid or compensated for such damage and so far as appears the village has taken no steps to acquire their rights or to compensate them for their damage. The village contends the plaintiffs have lost their rights to compensation by laches and neglect to assert or enforce such rights, if any. Claims for damages against the village were not filed until 1934.

However, it appears at the public meeting held by the State Conservation Commission when the proposed plans were considered parties did appear at such hearings and made protests, and it was then publicly stated by the representatives of the Commission that the village would have to compensate riparian owners along the creek for the rights taken, which has never been done so far as these plaintiffs are concerned.

The questions, therefore, raised in these actions are what rights the plaintiffs have and what relief, if any, are they entitled to.

That the plaintiffs had and possessed certain rights as riparian owners cannot be seriously questioned, and their claims are sustained by well-considered decisions of the courts of this State.

While the village of Hamburg, under the statutes, had the right to acquire for the use of its inhabitants an adequate water supply, as given by section 74 of the General Municipal Law, in so doing he village should have acquired by grant or condemnation the right to impound or appropriate the water taken, which would naturally flow through or along the plaintiffs' lands.

In the comparatively recent case of *United Paper Board Co.* v. *Iroquois Pulp & Paper Co.* (226 N. Y. 38) Judge COLLIN (at pp. 44 and 45) states: " The rule of law is familiar that each owner of land contiguous to a natural water-course has a right, as owner of such land and as naturally connected with and incident to it, to the natural flow of the stream along his land and its descent, and all the

force to be derived therefrom, for any domestic or hydraulic purpose to which he may decide to apply it. He may, by means of a ditch or conduit, withdraw water from the stream and cause it to flow unnaturally through his land for agricultural, industrial or other purpose, provided he causes it, in its substantial volume, to return upon his land to the stream. In order that he may enjoy those rights every owner is bound to use the water reasonably as it flows, so as not to injure the equal rights of all the owners. Whether or not a use or detention of the water is reasonable must be determined by the extent and capacity of the stream, the uses to which it is and has been put, and the rights that other owners on the stream have. The essential question in each particular case is what is reasonable under the conditions and circumstances there presented. Those are riparian rights, are natural and inherent, and a part of the estate of each riparian owner. (*Pierson* v. *Speyer*, 178 N. Y. 270; *Clinton* v. *Myers*, 46 N. Y. 511; *Bullard* v. *Saratoga Victory Manufacturing Co.*, 77 N. Y. 525.) " And (at p. 46) Judge COLLIN adds: " The right to the use of the water of a flowing stream, navigable or unnavigable, arises by mere operation of law as incident to the ownership of the bank and is a part of the estate of its owner. * * * It is a valuable property right which can be severed from the riparian land by grant, condemnation. relinquishment or prescription."

In the very recent case of *Adirondack Power & Light Corp.* v. *City of Little Falls* (148 Misc. 191) Justice EDWARD N. SMITH said (at p. 216): " While of course the city of Little Falls has the paramount right to acquire and have for the use of its inhabitants an adequate water supply, and has for such purposes the right of condemnation, and the decree to be entered must recognize this right, yet, not having seen fit to proceed by condemnation but to follow what seemed to be the line of least resistance, it becomes liable in damages, as hereinbefore found, and subject to injunctive relief in behalf of the plaintiffs."

To the same effect are the cases of *New York Rubber Co.* v. *Rothery* (132 N. Y. 293); *Amsterdam Knitting Co.* v. *Dean* (162 id. 278); *Strobel* v. *Kerr Salt Co.* (164 id. 303); *Gallagher* v. *Kingston Water Co.* (25 App. Div. 82); *Matter of Van Etten* v. *City of New York* (226 N. Y. 483); *Gilzenger* v. *Saugerties Water Co.* (66 Hun, 173; affd., without opinion, 142 N. Y. 633); *Smith* v. *City of Rochester* (92 id. 464; 104 id. 674).

The contention of the defendant, the village of Hamburg, that the plaintiffs cannot maintain these actions by reason of laches in delaying the bringing of these suits is not in the opinion of the referee a good defense.

This involves a discussion of the Statute of Limitations and also the rights of the defendant by virtue of prescription.

The present water system of the village went into operation March 6, 1928.

On June 9, 1934, the plaintiffs filed with the village claims for damages. In the plaintiffs' complaints they now ask simply for injunctive relief, which make their actions of a purely equitable nature.

The diversion of the waters of the Eighteen Mile creek is a continuous injury.

In the case of *Wright* v. *Syracuse, etc., R. R. Co.* (49 Hun, 445) the defendant railroad company had diverted a stream from its natural course in 1871, with the result that occasionally large quantities of sand and gravel were deposited on plaintiff's farm land impairing its usefulness. The plaintiff sought an injunction requiring the defendant to restore the stream to its original channel, and succeeded in the action. Affirming the judgment, the court said: " If right in the conclusion that the acts of the defendant had become a private nuisance, then a cause of action accrued to the plaintiff from day to day, and so long as the same was maintained and continued, and the statute of limitations, either of six or ten years, which the defendant invokes for its protection, does not apply. (*Staple* v. *Spring*, 10 Mass. 74; *Mayor of Albany* v. *Cunliff*, 2 Comst. 174; *Campbell* v. *Seaman*, 63 N. Y. 568; *Reed* v. *State*, 108 N. Y. 407–414.) "

The Statute of Limitations was raised as a defense to a claim for damages in the case of *Silsby Mfg. Co.* v. *State of New York* (104 N. Y. 562). The State was diverting more water from Seneca river than was necessary for navigation purposes, whereas it was limited in the amount to be withdrawn at the time of acquiring such right. The court held that the Statute of Limitations was not a bar to the claim for 1883 and 1884, but damages prior to two years were barred by the statute in question. The court said (at p. 569): " If the proper facts upon which to base an action were found, it would then appear that the State had unlawfully used a certain amount of water, to the use of which the claimant had an undoubted right, and every day such use continued a new cause of action arose therefor in favor of the claimant. Of course, when action was commenced all causes then existing would have to be included, but a recovery for the damages sustained, up to the time of the commencement of the action, would be no bar to those subsequently arising for subsequent unlawful diversions.

" The diversion being unlawful, it is not to be presumed that it will be continued; hence no foundation is laid for a recovery of

damages that might be sustained in the future. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98.) Besides the amount of the diversion is liable to vary from day to day, or hour to hour, and so wholly unstable would be the data that it would be entirely impossible to figure or reason upon the probable or possible amount of damage to accrue in the future.

"As damages could not be predicted of the future, so a failure to sue for past alleged damages would have no effect upon the rights of the claimant within the period not barred, which in this case is by the statute stated to be two years. For the damages, if any, which claimant has sustained for the two years prior to the commencement of this action, it is entitled to recover, the question to be determined by the rules we have laid down and upon the facts which may then appear in proof."

Another case is that of *Collins* v. *State* (103 Misc. 217), where there was diversion of waters by the building of a dam across a creek. The court said (at p. 220): "The diversion was continuous, and so was the damage resulting from it. The claim is not barred by the lapse of time. (*Knox* v. *Metropolitan El. R. Co.*, 58 Hun, 517; affd., 128 N. Y. 625; *Folts* v. *State*, 118 id. 406; *Wright* v. *Syracuse, B. & N. Y. R. Co.*, 49 Hun, 445; affd., 124 N. Y. 668.)"

The referee, therefore, finds the plaintiffs' actions for injunctive relief are not barred by the Statute of Limitations.

The referee also finds that the defendant has not acquired by prescription the right to withdraw the waters of Eighteen Mile creek as it has been doing without compensating riparian owners for the diversion.

As previously stated, there was prior to the erection of the present dam a low dam of about three feet in height. How long this had existed does not definitely appear, but it had been there some considerable time. However, no pumping station for taking the waters from the creek existed until the present one was built, and if any waters were taken from the creek by the village prior to the construction of the present system, it was small, as the evidence shows there was little, if any, apparent diminution of the water going over the dam, until the operation of the present system was begun.

The burden of showing a prescriptive right to divert the waters of the creek rested on the defendant. (*Knauth* v. *Erie R. R. Co.*, 219 App. Div. 83.) Assuming, however, that the village had acquired the right by prescription to take waters from the creek for its use, such right would be restricted and limited to the quantity previously taken, and could not be enlarged to such greater quantity

as would impair the natural right or rights of riparian owners to the creek waters.

The prescriptive right, if any, would be limited to the quantity taken twenty years ago.

In the case of *Prentice* v. *Geiger* (74 N. Y. 341) the court said (at p. 347): " The right acquired by prescription is commensurate with the right enjoyed. The extent of the enjoyment measures the extent of the right. The right is supposed to have had its origin in a grant, and the grant being lost, the user is the only evidence of the right granted, and as the presumption of a grant only exists where there has been an adverse, continuous and uninterrupted user, according to the nature of the easement claimed, for the period of twenty years, the prescriptive right is confined to the right as exercised for that period of time. The party claiming a prescriptive right cannot, within the twenty years, enlarge the use, and at the expiration of that time claim not only the use originally enjoyed but that use as supplemented and enlarged within the period of prescription." (*Knauth* v. *Erie R. R. Co.*, 219 App. Div. 83.)

Clear and strong proof is necessary to establish a prescriptive right. (*Metzger* v. *Martin*, 87 App. Div. 572; affd., without opinion, 177 N. Y. 561.)

The compensation to be paid the plaintiffs appears to be the difference in value of their premises deprived of the water diverted and their value without such diversion. (*Gray* v. *Village of Fort Plain*, 105 App. Div. 215; *Gallagher* v. *Kingston Water Co.*, 25 id. 82; affd., 164 N. Y. 602.)

The referee is unable to reach any other conclusion than that the plaintiffs are entitled to the injunctive relief asked. However, the question remains as to the form of the decrees to be entered and to the conditions to be imposed.

Injunctive relief is to a degree to be governed by the sound discretion of the court.

To make the injunctions asked operative instanter would involve great hardship on the village and its inhabitants. To deprive them of a suitable water supply might, in addition, cause not only hardship but promote the spread of disease and impair the health of the community. These things are to be avoided. The decrees in these actions should be such as to avoid such a situation and at the same time promote justice to all.

This we are of the opinion can be accomplished by the decree to be entered providing that the injunctions asked for be granted, unless the village, within four months after the service of the judgments to be entered, shall acquire by grant from the plaintiffs the right to appropriate the waters taken or, in the event of a

failure to acquire such rights by grant, by the commencement of condemnation proceedings to acquire such rights. Such proceedings to be prosecuted with all reasonable diligence to a final determination. In the event of a failure to acquire such right by grant, or the failure to institute such condemnation proceedings with proper diligence to a final determination, then the plaintiffs may apply on the foot of the decrees to be entered for an injunction for the relief asked against the continued impounding and use of the waters of the creek.

Such a decree will, we think, give the defendant ample time to do the things required, and, if necessary, provide the funds required to meet the expenses involved.

Such procedure, we think, will protect the rights of all parties, and is sustained by the rule laid down and emphasized by the Court of Appeals in the case of *Pappenheim* v. *Metropolitan Elevated R. R. Co.* (128 N. Y. 436).

In the event of a failure of the plaintiffs to agree with the village as to the compensation to be paid, and a resort to condemnation proceedings, the commissioners appointed to determine the damages sustained will take into consideration the extent to which plaintiffs' properties have been damaged in view of all the changed conditions arising from the diversion of the waters impounded.

Let findings and decrees be drawn as outlined in this opinion to be submitted on notice to the referee for his approval.

So ordered.