George **GREGORY** and Helen Gregory, Plaintiffs,

v.

The **CITY OF NEW YORK**, Defendant.

No. 66 Civ. 2150.

United States District Court, S. D. New York.

June 29, 1972.

Scheinman & Kalter, by Michael R. Gottlieb, Woodburne, N. Y., for plaintiffs.

J. Lee Rankin, Corporation Counsel, City of New York, by William P. Murray, Antonin Tutter, Kingston, N. Y., for defendant.

## MEMORANDUM

BRIEANT, District Judge.

This is a diversity case. Defendant has moved under F.R.C.P. 12(b) (1), (2), and (6), to dismiss the action on the ground that no "Notice of Claim" was served or filed with defendant City of New York, as required by §§ 50–i and 50–e of the General Municipal Law of the State of New York, McKinney's Consol. Laws c. 24.

Plaintiffs, citizens of New Jersey, allege ownership of riparian land in Pennsylvania, consisting of 124 acres with nearly 3,000 feet on the west shore of the Delaware River. Their land is downstream, on the Delaware, from two substantial dams and diversion works erected by defendant to obtain a public water supply.

In September, 1956, the City of New York began the permanent diversion of the east branch of the Delaware, at Downsville, New York, approximately 39 miles upstream from plaintiff's property, and in March of that year also commenced permanent diversion of the west

branch of the Delaware, at Cannonsville, New York, 22 miles upstream from plaintiffs' premises. Plaintiffs' property is below the confluence of these two branches of the Delaware River.

Plaintiffs purchased their property on June 16, 1960. Since that date they allege they have expended over $20,000.00 on improvements. The property is held for recreational and development purposes.

Plaintiffs claim that their riparian and water rights have been the subject of a continuous trespass from September 15, 1954 (sic), to the present in that this tortious conduct of defendant municipality had an adverse effect upon boating, fishing, swimming and bathing in the Delaware River. Plaintiffs also claim that the market value of their real property decreased due to the water diversion, beginning on March 31, 1967.

The diversion operations by the City were commenced pursuant to the authority found in Title K, Chapter 51 of the Administrative Code of the City of New York, more commonly known as the Water Supply Act. The Code prescribes procedures by which downstream riparian owners and others can receive compensation for impairment, or taking of rights, in the flow of the stream, by the City. Owners of all the lands from the Delaware-Sullivan County border in the State of New York to the village of Callicoon, New York, which lies directly across the river from plaintiffs' property, are protected by and entitled to assert damage claims under the portion of that Code known as Delaware Riparian Section No. 2.

Compensation has been paid to New York owners of Delaware River riparian lands, based on the theory of a "taking", or a single payment or award to cover all future and present damages to the riparian rights, based on the assumption that the diversion will be permanent.

■ No such damage award has been paid to the Pennsylvania owners, such as plaintiffs, who are actually across the river from, and identically situated with the New York riparian owners in Callicoon. The City of New York, by the practical construction of Title K, Chapter 51 of its Administrative Code, has taken the position that recovery thereunder is not available to owners of such property. There may be some support for this position. For example, § K51–12.0 provides that the commissioners of appraisal administering the relevant provisions must meet "within the judicial district where the lands or any part thereof may be located." Plaintiffs' lands are not within any judicial district, a word of art in New York (Judiciary Law § 140, McKinney's Consol.Laws, c. 30. Well recognized policies of federal abstention prevent this Court from construing the Code as applicable to these plaintiffs, in the absence of any such construction by a New York Court, and in view of the long standing contrary interpretation by those who must apply its provisions.

■ If procedures under Title K, Chapter 21 of the Administrative Code of the City of New York were available to plaintiffs, the "Limitation of time for presenting claims" would be three years from "the execution of the plan or work" § K51–18.0(b), Adm.Code. A similar statutory scheme in Massachusetts has been construed to extend its benefit to owners of damaged riparian land in downstream Rhode Island, Banigan v. City of Worcester, 30 F. 392 (Mass. 1887); Manville Co. v. City of Worcester, 138 Mass. 89. If the New York City code provision is susceptible to the same construction, a non-resident owner of out-of-state property could waive the tort, and proceed in New York courts under the code provision. See 1 Nichols on Eminent Domain § 2.12(2). But he need not do so; he may proceed in Federal Court on diversity jurisdiction to recover damages for the continuing trespass. There, he may be awarded his damages to the date of judgment, or under the equitable doctrine first enunciated in Lord Cairn's Act (21–2 Vict. chapter 27), a court may, in order to put the controversy to rest, award damages for anticipated future injury to the property

during the future life of the diversion works, or in perpetuity, as circumstances may warrant. If such a damage award is found proper, after a trial, the result of the litigation will in no sense differ from that accomplished in an "inverse condemnation" case, nor will it differ from the result of proceedings under Title K, Chapter 51 of the Administrative Code. Squaw Island F. T. Co. v. City of Buffalo, 273 N.Y. 119, 7 N.E.2d 10 (1937); Kraatz v. Certain-Teed Products Corporation, 20 N.Y.S.2d 13 (Sup. Ct. 1940).

■ Yet such possible similarity of result should not lead to the conclusion that owners of riparian land outside New York, subjected to a continuous common law trespass, are with reference to "equal protection" similarly situated in all respects to those New York State property owners who have the benefit of Title K, *supra*. Inverse condemnation exists only where the power to condemn inheres in the defendant. City of New York v. Pine, 185 U.S. 93, 22 S.Ct. 592, 46 L.Ed. 820 (1902).

No such power has been granted to the City of New York by the Pennsylvania legislature, or by the Congress, which are the only possible sources of such power.

Plaintiffs assert a grievance of Constitutional magnitude because § 50–i of the General Municipal Law, applicable to tort claims, imposes a one year and ninety day requirement for commencement of the action "after the happening of the event upon which the claim is based", while Title K of the Administrative Code, *supra*, permits an elapsed time period of three years from completion of the work.[1]

■■ This argument, based on the equal protection and due process clauses of the Fourteenth Amendment to the U. S. Constitution, is rejected. Reason-

able classification of different matters, treating them differently on a rational basis, is permissible. Such a classification is offensive to the equal protection safeguard "only if [it] rests on grounds wholly irrelevant to the achievement of the State's objective", Lindsey v. Normet, 405 U.S. 56, 70, 92 S.Ct. 862, 872, 31 L.Ed.2d 36 (1972) quoting McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The remedy of inverse condemnation differs sufficiently from an action on a common law tort so as to justify a different statutory scheme for each, in the wisdom of the legislative power. As noted, inverse condemnation is not available to these plaintiffs. No denial of due process is shown; plaintiffs have a remedy in this Court, which will protect them from any deprivation of their property.

There remains for consideration, the effect of conceded failure by plaintiffs to comply with §§ 50–e and 50–i of the General Municipal Law. Defendant asserted this failure as an affirmative defense in its answer filed August 26, 1966. As a result of answers to interrogatories proposed by the City, filed by plaintiffs on March 20, 1972 in this Court, it appeared conclusively that no such notice of claim had been filed.

■ The complaint alleges a continuing trespass to defendant's riparian rights, arising out of the diversion of substantial amounts of water from the Delaware, into the Hudson River and New York Harbor. Plaintiffs, as riparian owners on the Delaware, are entitled to the natural flow of the stream along their land free of diversion or such use by the upstream owners, such as the defendant as exceed reasonable use. Gardner v. Trustees of Village of Newburgh, 2 Johnson's Chancery Reports 162 (1816), Strobel v. Kerr Salt Co., 164 N.Y. 303, 58 N.E. 142 (1900), Prentice

---

1. Depending on the mode of operation of the water works, weather conditions and rainfall, water consumption levels, and the yield of the City's other water resources, it is possible that no damage would be incurred, under § 50–i of the General Municipal Law, for more than three years following erection of the dams and tunnels, as contemplated by Title K, *ibid.* Plaintiffs are not damaged until a material alteration of normal river flow occurs. See *infra*, p. 143.

v. Gerger, 74 N.Y. 341, 345 (1878). The law of Pennsylvania is to substantially the same effect. Clark v. Pennsylvania R. Co., 145 Pa. 438, 22 A. 989 (1891); Horn v. Miller, 136 Pa. 640, 20 A. 706 (1890); Lord v. Meadville Water Co., 135 Pa. 122, 19 A. 1007 (1890); Haupt's Appeal, 125 Pa. 211, 17 A. 436 (1889); Scranton Gas & Water Co. v. Delaware L. & W. R. Co., 240 Pa. 604, 88 A. 24 (1913).

■ No tort action may be commenced against defendant City of New York unless (1) a notice is served and filed within ninety days after the claim arises; (2) at least thirty days are allowed to elapse; and (3) the action is commenced within one year and ninety days after the happening of the event on which the claim is based §§ 50–e and 50–i, General Municipal Law. The instant action was commenced on July 15, 1966. No notice of claim was ever filed.

The act complained of is a continuing trespass, as to which "each new day establishes the cause anew." Bloss v. Village of Canastota, 35 Misc.2d 829, 831, 232 N.Y.S.2d 166, 168 (Sup.Ct.Mad.Co. 1962). See also Hartzell v. Village of Hamburg, 155 Misc. 345, 279 N.Y.S. 650 (Sup.Ct., Erie Co. 1935), aff'd, *sub nom.* Caudwell v. Village of Hamburg, 248 App.Div. 667, 289 N.Y.S. 910, modified on other grounds, 273 N.Y. 476, 6 N.E.2d 411 (1936), in which plaintiff downstream owner asserted a claim against a village for damages and an injunction forbidding the defendant to continue to divert water for the purposes of the village's water supply. The village interposed the notice of claim defense herein asserted on the grounds that diversion had begun several years earlier. The defense was dismissed because of the continuing nature of the injury. 155 Misc. at 349, 279 N.Y.S. 650.

The basis for the rule of law that continuing trespasses or uncompensated diversions are not barred by the passage of time is the judicial determination that the injured party should not be required to bring more than one action or to in-

stitute proceedings before he is aware of the potential extent of his injury. United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947).

This Court (Pollack, J.) has held, under facts not materially different from the instant case, [Hackensack Water Company v. Village of Nyack, 289 F. Supp. 671 (1968)] that filing of the notice of claim is a condition precedent to commencement of the action. *Hackensack* also holds delay in filing the notice bars any claim for damages incurred more than ninety days prior to filing. Those causes of action which are deemed to have "arisen anew" each day under the theory of a continuing trespass, may be litigated here upon filing the notice.

The *Hackensack* case did not consider, nor do we now consider, the effect, if any, to be given under the circumstances of this case, to the requirement of actual notice imposed on defendant in Schroeder v. City of New York, 371 U.S. 208, 214, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) with respect to a diversion. That issue is held for future determination.

■ Plaintiff urges that an action would lie for an injunction to restrain a continuing trespass, although in this case no injunction would issue, because plaintiffs have an adequate remedy at law, a balancing of the equities does not permit me to enjoin the operation of this public water supply for millions, and last but not least; laches. The suggestion is that a plaintiff in an injunction action, held not entitled to an injunction will be granted damages, and accordingly, since an action for injunction is not a "claim" within §§ 50–e and 50–i, *supra*, no notice of claim need be filed here.

This contention, appealing on its face, must be rejected. The complaint here is not one in which equitable relief is available, and money damages merely incidental. Fontana v. Town of Hempstead, 18 A.D.2d 1084, 239 N.Y.S.2d 512, aff'd 13 N.Y.2d 1134, 247 N.Y.S.2d 130. Rather, the pleadings and facts, and the cause of action, as noted, are indistinguishable from the *Hackensack* case, su-

*pra,* in which the requirement that a notice of claim be filed was held to apply.

■ The provisions of §§ 50–e and 50–i, General Municipal Law, are more than mere statutes of limitation or statutes of repose. They establish conditions precedent to the initiation of a lawsuit against a municipality. A legislative purpose is to permit a municipality to receive prompt notice of a claim, so that investigation may be made before it is too late for investigation to be efficient [Winbush v. City of Mt. Vernon, 306 N.Y. 327, 118 N.E.2d 459 (1954)], and to adjust differences without suit [Brown v. Bd. of Trustees, Town of Hamptonburg & School Dist. No. 4, 303 N.Y. 484, 104 N.E.2d 866 (1952)].

Defendant is entitled to the benefits of §§ 50–e and 50–i of the General Municipal Law in this case, subject to the rights, if any, of plaintiffs, under the due process requirements of Schroeder v. City of New York, *supra,* not presently considered, to assert, in their notice to be filed, claims regardless of age, not barred because of failure by defendant to give actual notice.

Defendant's motion raises peripheral issues of a practical nature. The filing of the required notice of claim will not give the City any meaningful opportunity to investigate or adjust this claim, which has been pending in this Court since 1966, and is based on the City's own acts. If, as appears likely, lump sum damages are assessed to cover the diversion from inception into perpetuity, or near perpetuity measured by the future life of the dams, will such damages be lessened materially because the first five or six years of such permanent diversion are excluded?

While the complaint must be dismissed, the controversy remains. Plaintiffs', if so advised, are granted a period of 125 days from the date of this Memorandum, within which to serve their notice of claim, and serve and file an amended complaint, setting forth such service, and expiration, as will doubtless

occur, of thirty days following such service. If plaintiffs fail so to do, defendant may submit an order granting the motion to dismiss in all respects.

So Ordered.